DAMIEN M. SCHIFF, No. 235101
Email: dschiff@pacificlegal.org
CALEB R. TROTTER, No. 305195
Email: ctrotter@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

Attorneys for Plaintiffs Joseph Abad and Austen Brown

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ABAD; AUSTEN BROWN,<br><br>               Plaintiffs,<br><br>   v.<br><br>CHARLTON BONHAM, in his official capacity as Director of the California Department of Fish and Wildlife; XAVIER BECERRA, in his official capacity as Attorney General of the State of California,<br><br>               Defendants. | No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Complaint for Declaratory & Injunctive Relief
No. _____

**JURISDICTION**

1. The Court has subject matter jurisdiction over this action pursuant to: 42 U.S.C. § 1983 (deprivation of federal rights); 28 U.S.C. §§ 1331 (authorizing federal question jurisdiction in the district courts), 1343 (civil rights), and 2201-2202 (Declaratory Judgment Act); the Supremacy Clause of the United States Constitution, art. VI, cl. 2; and *Ex parte Young*, 209 U.S. 123 (1908) (authorizing suits against state actors in their official capacities for equitable relief to restrain violations of the Constitution).

**INTRODUCTION**

2. Fishing is an ancient and honorable tradition. Plaintiffs Joseph Abad and Austen Brown are fishermen who have collectively plied their trade in the waters of the Pacific Ocean for more than 50 years.

3. Mr. Abad has fished commercially for over 30 years. He has participated in California fisheries for salmon, crab, albacore, swordfish, squid, and black cod.

4. Currently, Mr. Abad participates in the drift gill net swordfish fishery through permits, vessel, and nets owned by his employer. Mr. Abad's employer has agreed to transfer his federal drift gill net permit to Mr. Abad, so as to allow Mr. Abad to independently participate in the West Coast commercial swordfish fishery using drift gill nets, and in turn to make unnecessary the employer's presence on board when the drift gill nets are used. However, Mr. Abad and his employer have not completed the transfer due to the law challenged in this case.

5. Swordfish are an important part of the professional and personal life of Mr. Brown. Mr. Brown has fished commercially since he was a child, gradually honing his craft and gaining experience as a crewmember and deckhand on boats up and down the West Coast. After getting his start fishing for swordfish, Mr. Brown ran a boat in Alaska for nearly a decade fishing for seasonal species, primarily pollock and salmon. Of late, Mr. Brown has run a longline boat in Hawaii for tuna. Mr. Brown is also a fish broker, having sold drift gill net-caught swordfish to markets across the United States.

6. Mr. Brown would now like to return to his roots and diversify his business by participating in the West Coast commercial swordfish fishery using drift gill nets—the only proven

commercially viable gear for the fishery. To that end, he has obtained a federal permit, has access to the requisite gear and properly permitted vessel, and is fully prepared and can readily obtain a California commercial fishing license. (A true and correct copy of Mr. Brown's federal permit is attached to the Complaint as Exhibit 1).

7. The West Coast swordfish industry is an important component of the nation's domestic fishing industry, as evidenced by the National Marine Fisheries Service's decision to federalize the fishery in 2018 through a permitting system administered by that agency.

8. But shortly after that decision, the California legislature enacted Senate Bill 1017, which amended the state's Fish and Game Code to terminate California's decades-old permitting program for the commercial catch and landing of swordfish by drift gill net. As a result of S.B. 1017's amendments, fishermen like Mr. Abad and Mr. Brown are prohibited from obtaining state permits from existing permittees and therefore are prohibited from taking or landing swordfish for commercial purposes by drift gill net. And once fully implemented, S.B. 1017 will eliminate all outstanding state permits and result in the Fish and Game Code's categorical prohibition on the taking or landing for commercial purposes of swordfish caught by drift gill net. The state program established by S.B. 1017 is therefore aimed at eliminating the swordfish drift gill net fishery in California, thus preventing Mr. Abad, Mr. Brown, and other similarly situated fishermen from accessing seaports for the purpose of exercising the right to earn a living by fishing for swordfish.

9. Because it attacks what federal law expressly permits, and because it precludes the commercially viable use of a federally regulated fishery, California's anti-fisherman campaign unlawfully deprives Mr. Abad and Mr. Brown of their federal rights, including their Fourteenth Amendment right to earn a living secured by the Privileges or Immunities Clause, or is otherwise preempted by federal law. Mr. Abad and Mr. Brown therefore bring this action to obtain declaratory and injunctive relief to vindicate their federal rights and to safeguard their trade and business.

**VENUE**

10. Venue in the Eastern District of California is proper because Defendants reside in this District, in that they maintain their principal offices in which they discharge their official duties in this District. *See* 28 U.S.C. § 1391(b)(1).

11. Venue in the Sacramento sitting of the Court is proper because this action arises in Sacramento County, wherein Defendants maintain their principal offices in which they discharge their official duties. *See* L.R. 120(d).

## THE PARTIES

### *Plaintiffs*

12. Plaintiff Joseph Abad is a California native, United States citizen, and an active commercial swordfish fisherman. Although he resides in Oregon, he has been a licensed commercial fisherman in California for over 30 years. Mr. Abad wishes to continue fishing in the swordfish drift gill net fishery, but as an independent permit-holder. He currently participates in the drift gill net swordfish fishery through a permit held by his employer, but Mr. Abad's employer wishes to transfer his federal drift gill net permit to Mr. Abad once that permit becomes eligible for transfer. However, absent a declaration that S.B. 1017 is illegal, Mr. Abad and his employer are unwilling to complete the transaction. As a result, Mr. Abad is currently barred from making a living as an independent commercial fisherman of swordfish.

13. Plaintiff Austen Brown is a California resident, United States citizen, and an active commercial fisherman. Mr. Brown wishes to enter the swordfish drift gill net fishery. To that end, Mr. Brown has acquired a general state swordfish permit, as well as a federal drift gill net permit. However, he must also obtain a state drift gill net permit under California law. But California law does not authorize the issuance of state drift gill net permits to new permittees, and it prohibits the transfer of existing state permits. Mr. Brown is unwilling to fish under his federal permit on account of his reasonable fear that the California Fish and Game Code's penalties for unpermitted taking and landing of swordfish for commercial purposes by drift gill net will be enforced against him should he choose to do so. As a result, Mr. Brown is currently barred from making a living as a commercial fisherman of swordfish.

### *Defendants*

14. Defendant Charlton Bonham is the Director of the California Department of Fish and Wildlife. He is the highest ranking Department official, and as such is ultimately responsible for the Department's enforcement of the California Fish and Game Code, including those portions

the application of which is challenged in this action. Director Bonham is sued in his official capacity only, pursuant to *Ex parte Young*, for depriving Mr. Abad and Mr. Brown of their federal rights under color of state law.

15. Defendant Xavier Becerra is the Attorney General of the State of California. He has chief responsibility for the judicial enforcement of the state's laws, including those portions of the California Fish and Game Code the application of which is challenged in this action. Attorney General Becerra is sued in his official capacity only, pursuant to *Ex parte Young*, for depriving Mr. Abad and Mr. Brown of their federal rights under color of state law.

## LEGAL FRAMEWORK

### *Preemption and Privileges or Immunities*

16. The Supremacy Clause of the United States Constitution provides that the Constitution, treaties, and federal statutes "shall be the supreme Law of the Land," which shall bind "the Judges in every State . . . , any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

17. A law that violates the Supremacy Clause is preempted thereby and without force or effect.

18. A state law can be preempted in three different ways. First, Congress may expressly override a state law. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663-64 (1993). Second, Congress may impliedly override a state law by occupying an entire field of regulation. *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376-78 (2015). Third, Congress may impliedly override a state law whenever the latter conflicts with federal law, either because it is impossible to comply with both, *Mut. Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 480 (2013), or because the state law imposes an intolerable burden on the achievement of federal policy, *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).

19. The Privileges or Immunities Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1.

///

20. The privileges or immunities "of citizens of the United States" include those "which own [sic] their existence to the Federal government, its National character, its Constitution, or its laws." *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 79 (1873).

### *Federal Fisheries Management*

21. The principal federal regulation of commercial fisheries is the Magnuson-Stevens Fisheries Conservation and Management Act, 16 U.S.C. §§ 1801-1891d.

22. Administered by the National Marine Fisheries Service (also known as NOAA Fisheries) through delegation from the Secretary of Commerce, the Act establishes national standards for fishery management. *Id*. § 1851.

23. These standards are implemented through fishery management plans developed by eight regional fishery management councils and approved by the Service. *See id.* § 1852.

24. The requirements of fishery management plans are typically implemented through a permitting system.

25. The Act both preserves some state authority over state waters and authorizes limited state regulation of federal waters. *Id*. § 1856.

26. The Act allows states to regulate fisheries within state waters (to three miles off shore), *id*. § 1856(a)(1), unless such regulation would substantially and adversely affect the carrying out of a federal fishery management plan governing a fishery that exists predominantly outside of state waters, *id*. § 1856(b).

27. The Act allows for extra-territorial state regulation of fishing vessels registered in that state, but such regulation must be consistent with all pertinent federal fishery management plans. *See id*. § 1856(a)(3).

### *California Fish and Game Code*

28. Even before enactment of S.B. 1017, California regulated the commercial take of swordfish using drift gill nets, and those provisions remain in place today.

29. Under California law, "swordfish shall not be taken for commercial purposes with drift gill nets except under a valid drift gill net . . . swordfish permit." Cal. Fish & Game Code § 8561.

30. A "valid drift gill net . . . swordfish permit" is a permit issued by the California Department of Fish and Wildlife. *See* Cal. Code Regs. tit. 14, § 106(a)(2) ("The department shall issue permits . . . .").

31. A violation of the drift gill net permitting requirement is a misdemeanor, *see* Cal. Fish & Game Code § 12000(a), punishable by a fine of up to $40,000 and imprisonment in the county jail for up to one year, *id*. § 12012(a), forfeiture of all commercial fishing licenses, *id*. § 12153, and seizure of all fish taken without a permit, *see id*. § 12159.

## FACTUAL ALLEGATIONS

### *The West Coast swordfish fishery*

32. The swordfish (*Xiphias gladius*) is a large migratory fish found throughout the Pacific, Atlantic, and Indian Oceans. Popular since ancient times as food, the swordfish has for decades been the subject of a robust commercial fishery off of the U.S. West Coast.

33. Most swordfish caught within the commercial swordfish fishery are caught an average of 40-60 miles off shore.

34. The traditional gear for the West Coast commercial swordfish fishery is the harpoon.

35. Since the early 1980s, California has operated a permit system for the commercial fishing of swordfish using drift gill nets. *See* Cal. Stats. 1982 ch. 1078, § 3, at 3901 (creating Cal. Fish & Game Code § 8561).

36. A drift gill net is a wall of netting that hangs in the water column. Typically made of nylon, the net's mesh is large enough to allow a fish to insert its head but not its body. The net thus catches the fish by its gills. The net is kept afloat at the proper depth by weights and buoys. *See* NOAA Fisheries, Fishing Gear: Gillnets, *at* https://bit.ly/2r478zl (last visited Feb. 24, 2020).

37. California's drift gill net permitting program is "limited entry" in that the maximum number of permits available is based on the number of eligible fishermen at the program's inception. *See* Cal. Stats. 1982 ch. 1078, § 3, at 3902 (predicating eligibility on having a shark drift gill net permit or on having landed a certain poundage of swordfish).

38. As with nearly all commercial fishing gear, the use of drift gill nets produces bycatch, *i.e.*, the catch of species other than the intended species. Decades ago the drift gill net

Complaint for Declaratory & Injunctive Relief    7
No. _____

fishery in California was considered to have an unacceptably high bycatch rate for marine mammals and other protected species. But subsequently enacted regulation has nearly eliminated unwanted bycatch. For example, the National Marine Fisheries Service has implemented time and area closures to protect leatherback and loggerhead sea turtles. U.S. Dep't of Commerce, NOAA Nat'l Marine Fisheries Serv., U.S. Nat'l Bycatch Report 36 (2011), *at* https://bit.ly/38ZC3kL. The agency also has required the use of acoustic pingers to discourage interaction with cetaceans, such as whales and dolphins. *Id*.

39.  These and other mitigation efforts "have dramatically reduced bycatch of protected species such that it is now relatively unusual for many large whales and turtles to become entangled." NOAA Fisheries West Coast Region, FAQs: West Coast drift gillnet (DGN) fishery & protected species 4 (June 2017) [hereinafter NOAA FAQ], *at* https://bit.ly/2KsCdcu. This remarkable success is well illustrated by the following graphs:



Complaint for Declaratory & Injunctive Relief
No. _____

8



Source: NOAA Fisheries, West Coast Region, *Two Decades Later, Focused Efforts on Reducing Entanglements in Gillnet Fishery Still Paying Off* (June 2017), *at* https://bit.ly/2IeMcQH.

40. Because of these and other measures, the Service in 2018 re-designated the California drift gill net fishery a "Category II" fishery, 83 Fed. Reg. 5349, 5362 (Feb. 7, 2018), meaning that it only occasionally injures marine mammals. NOAA Fisheries, Marine Mammal Protection Act List of Fisheries, *at* https://bit.ly/2PQVOkK (last visited Feb. 24, 2020). The Service reaffirmed the fishery's Category II status in 2019, 84 Fed. Reg. 22,051, 22,063 (May 16, 2019), and has proposed to retain that status for 2020, 84 Fed. Reg. 54,543, 54,551 (Oct. 10, 2019).

41. In part because of the impact on profitability caused by these significant mitigation measures, many drift gill net fishermen have exited the fishery. *See* NOAA FAQ at 5 ("[T]he number of vessels participating in the [drift gill net] fishery has dropped by about 90 percent since the 1990s to just 20 vessels [in 2016]."). The remaining fishermen are small operations that rely principally on swordfish to provide a significant portion of their income. *Id*.

///

42. Opponents of drift gill nets contend that "deep set buoy gear"—a floating buoy supporting a single vertical line with baited hooks—is a more environmentally sensitive yet still economically viable gear. Cal. Stats. 2018 ch. 844, § 1(e), (f) (S.B. 1017).

43. There is no evidence that deep set buoy gear is adequate for a viable commercial swordfish fishing operation. *See, e.g.*, Letter from Chugey Sepulveda, *et al.*, to Sen. Diane Feinstein (May 6, 2019) ("[W]hile there is potential for alternative gear to be used in this fishery, currently there is no existing gear that can be substituted for the [drift gill net] gear and still allow fishermen to earn a living."). (A true and correct copy of the Letter from Chugey Sepulveda, *et al.*, to Sen. Diane Feinstein is attached to this Complaint as Exhibit 2.)

44. There is, however, evidence that such gear can be environmentally damaging. For example, in 2018, a loggerhead sea turtle—a species protected under the Endangered Species Act—was caught by deep set buoy gear.

*Federalization of the swordfish drift gill net fishery*

45. In 2003, the Pacific Fishery Management Council proposed, and in 2004 the National Marine Fisheries Service adopted, a fishery management plan for the swordfish and the West Coast's other highly migratory species. *See* 69 Fed. Reg. 18,444 (Apr. 7, 2004).

46. The plan assumed direct control of most of the previously state-regulated fisheries. It did at that time, however, allow California to continue to administer its permitting program for the drift gill net fishery. *See* 69 Fed. Reg. at 18,450.

47. In 2017, the Pacific Council and the Service amended the plan to allow for a federalization of the California drift gill net permitting program. Pac. Fishery Mgmt. Council, *Fishery Management Plan for U.S. West Coast Fisheries for Highly Migratory Species As Amended Through Amendment 5* at 1 (Apr. 24, 2018), *at* https://bit.ly/2HSyCjP.

48. Soon thereafter, the Service enacted implementing regulations for the permitting program. *See* 83 Fed. Reg. 11,146 (Mar. 14, 2018). The number of permits is limited to the number of fishermen who held a valid state permit at the federal program's inception. 50 C.F.R. § 660.707(f)(2). Although the federal permitting system "adopts many of the current State of California management measures associated with the [drift gill net] fishery," 83 Fed. Reg. at

11,147, fishermen who initially qualified for the federal program need not maintain an active state permit in order to renew their federal permit, *see* 50 C.F.R. § 660.707(f)(9). The program also authorizes the transfer of federal permits between fishermen. *Id*. § 660.707(f)(8).

### *California's permit buyback and permit revocation scheme*

49.  Shortly after the creation of the federal permitting program, the California legislature enacted S.B. 1017 (Allen 2018). The law creates a permit buyback program, according to which state permit holders may receive compensation from the state (up to $110,000) if they surrender their drift gill net fishing equipment and state drift gill net permits to the Department, and agree not to use or transfer their federal drift gill net permits. S.B. 1017, § 7, Cal. Fish & Game Code § 8583.

50.  In addition to the buyback program, S.B. 1017 establishes a sunset date for all state drift gill net permits that are not surrendered pursuant to the buyback program. Specifically, as of January 31 of the fourth year following the establishment of the buyback program, all outstanding state permits shall be automatically "revoked." S.B. 1017, § 3(c), Cal. Fish & Game Code § 8561(c).

51.  S.B. 1017 also prohibits, as of March 31, 2019, the transfer of state drift gill net permits. S.B. 1017, § 5, Cal. Fish & Game Code § 8561.5(a).

52.  In September, 2019, the Department promulgated regulations to govern the buyback program's operation. *See* Cal. Code Regs. tit. 14, § 106.5. The Department expects the buyback program to begin offering compensation "within a couple months of the completion" of the program's rulemaking. Final Statement of Reasons for Regulatory Action, Appendix C, Responses to Public Comment on Drift Gill Net Transition Program 1 (Aug. 30, 2019), *at* https://bit.ly/2pVVAkK.

### **DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS**

53.  An actual and substantial controversy exists between Plaintiffs and Defendants. Mr. Abad and Mr. Brown contend that they have the right to conduct their trade pursuant to federal drift gill net permits, notwithstanding S.B. 1017's elimination of the state drift gill net program, including state permit transferability. Defendant Director Bonham and the California Department of Fish and Wildlife have been notified repeatedly of the position of many participants within the

California swordfish fishery that the state prohibition on the catch and landing of swordfish for commercial purposes using drift gill nets violates federal law. Letter of Ashley J. Remillard to the Honorable Edmund G. Brown, Jr., *et al*. (Aug. 30, 2018); Letter of Damien M. Schiff to Director Charlton H. Bonham (Jan. 17, 2019); Letter of Damien M. Schiff to Ona Alminas, Cal. Dep't of Fish & Wildlife (May 17, 2019); Letter of Damien M. Schiff to Ona Alminas, Cal. Dep't of Fish & Wildlife (June 17, 2019). (True and correct copies of these letters are attached to the Complaint as Exhibits 3, 4, 5, and 6, respectively.)

54. Neither Defendants nor any other official of the Department or of the Attorney General's Office on behalf of the Department has provided any substantive response to these statements from concerned fishermen. *Cf.* Final Statement of Reasons for Regulatory Action, Appendix B, Responses to Public Comment on Drift Gill Net Transition Program 3 (Aug. 30, 2019), *at* https://bit.ly/2pVVAkK (stating that the preemption question raised by comment letters "is outside the scope of this rulemaking"); *id.* Appendix C, Responses to Public Comment on Drift Gill Net Transition Program 1 (Aug. 30, 2019) (same).

55. This failure to respond is reasonably interpreted as a disagreement with the position of fishermen like Mr. Abad and Mr. Brown that S.B. 1017 is preempted or is otherwise unenforceable to the extent that it prohibits the commercial taking or landing of swordfish by drift gill net pursuant to a valid federal permit. Therefore, declaratory relief is proper to resolve whether the California Fish and Game Code's prohibition as applied to fishermen possessing federal drift gill net permits who cannot obtain state drift gill net permits, either because of S.B. 1017's transfer restriction, or because of S.B. 1017's revocation of state permits (once effective), violates the Constitution's Supremacy Clause and the Fourteenth Amendment's Privileges or Immunities Clause.

56. Without declaratory relief, and if an injunction does not issue precluding Defendants from applying S.B. 1017's prohibition to fishermen possessing federal drift gill net permits but who cannot obtain state drift gill net permits because of S.B. 1017's state permit transfer restriction, Mr. Abad and Mr. Brown will be irreparably injured. A substantial part of Mr. Brown's and Mr. Abad's income is expected to come from participation in the drift gill net fishery.

57. In the absence of relief from this Court, Mr. Abad is not willing to acquire his employer's federal drift gill net permit, nor is he willing to fish without a valid state drift gill net permit, for fear of prosecution by Defendants for violation of the California Fish and Game Code's state drift gill net permitting requirement, Cal. Fish & Game Code § 8561(a), and resulting seizure of all caught swordfish, *id*. § 12159, and other penalties. *See id*. §§ 12012(a), 12153.

58. Likewise, without relief from this Court, Mr. Brown is not willing to fish without a valid state drift gill net permit, for fear of prosecution by Defendants for violation of the California Fish and Game Code's state drift gill net permitting requirement, *id*. § 8561(a), and resulting seizure of all caught swordfish, *id*. § 12159, and other penalties. *See id*. §§ 12012(a), 12153.

59. Mr. Abad and Mr. Brown have no plain, speedy, and adequate remedy at law for these injuries. Money damages in this case are not available.

**CLAIMS FOR RELIEF**

**Count I:**

**(Deprivation of Federal Rights, 42 U.S.C. § 1983)**

60. All preceding paragraphs are incorporated herein by reference.

61. California law prohibits the taking and landing of swordfish caught by drift gill net for commercial purposes except pursuant to a valid state drift gill net swordfish permit. *See* Cal. Fish & Game Code §§ 8561(a), 12159.

62. California law does not authorize the issuance of drift gill net permits to new permittees. *See id*. § 8568(b) (authorizing issuance of permit only "to any prior permittee . . . during the preceding season"). Nor does California law authorize the transfer of existing state permits. *Id*. § 8561.5(a).

63. The taking of swordfish caught by drift gill net for commercial purposes is expressly authorized by federal law. 50 C.F.R. § 660.707(f).

64. The landing of swordfish caught by drift gill net for commercial purposes is impliedly guaranteed by federal law. *See City of Charleston, S.C. v. A Fisherman's Best, Inc.*, 310 F.3d 155, 173, 176 (4th Cir. 2002) ("But where there is [a federal management plan] in effect and

///

Complaint for Declaratory & Injunctive Relief
No. _____

13

the cargo consists of fish that have been caught in federal waters the fisherman is entitled to access to landing facilities to land his catch.").

65. For the West Coast swordfish fishery, no gear besides the drift gill net is both lawful and adequate for a viable commercial swordfish fishing operation.

- The only gear besides drift gill net that is currently lawful and generally available is the harpoon and single hook-and-line. *See* Cal. Code Regs. tit. 14, § 107(e)(1). The yield of swordfish from harpoon and single hook-and-line is not adequate for a viable commercial swordfish fishing operation.
- Experimental permits have been made available to use deep set buoy gear to target swordfish. But neither Mr. Abad nor Mr. Brown possesses such a permit, no general permit for that gear's use currently exists, and no general permit is likely to be developed within the foreseeable future. Moreover, the yield of swordfish from deep set buoy gear is not adequate for a viable commercial swordfish fishing operation.

66. The California Fish and Game Code's prohibition on the taking or landing for commercial purposes of swordfish caught by drift gill net imposes an intolerable burden on the pursuance of federal fishery management policy by (i) directly attacking conduct that is affirmatively protected by federal law, and (ii) substantially undercutting the commercial viability of a federally regulated fishery. *Cf. Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015) (fishery preemption question resolved by whether federal law "affirmatively guarantees" what state law prohibits, and whether state law prohibits "commercially viable uses" for the fishery).

67. Therefore, Defendants' enforcement of the California Fish and Game Code's prohibition on the taking or landing for commercial purposes of swordfish caught by drift gill net is, as applied to Mr. Abad and Mr. Brown, a deprivation of their federal rights secured by the Magnuson Fisheries Act and its implementing regulations, including 50 C.F.R. § 660.707(f).

///

///

**Count II:**

**(Preemption; claim for relief in the alternative)**

68. All preceding paragraphs are incorporated herein by reference.

69. Acting as courts of equity, federal courts have the power to review and enjoin unconstitutional action by state officers. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015).

70. No provision of federal law precludes the private enforcement of the preemptive effect of the Magnuson Fisheries Act or its implementing regulations.

71. For the reasons stated in Count I of the Claims for Relief, Defendants' enforcement of the California Fish and Game Code's prohibition on the taking or landing for commercial purposes of swordfish caught by drift gill net is, as applied to Mr. Abad and Mr. Brown, preempted by the Supremacy Clause, U.S. Const. art. VI, cl. 2.

**Count III:**

**(Federal Privileges or Immunities)**

72. Paragraphs 1-59 are incorporated herein by reference.

73. The Privileges or Immunities Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1.

74. The "right of free access to [the United States'] seaports, through which all operations of foreign commerce are conducted," is one of the privileges protected by the Privileges or Immunities Clause. *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 79 (1873) (quotation omitted); *cf. Courtney v. Goltz*, 736 F.3d 1152, 1160 (9th Cir. 2013) (right to access "navigable waters of the United States" for purpose of operating a public ferry is not protected by Privileges or Immunities Clause because right does not apply in commercial context).

75. The right to access seaports is expressly connected to commercial purposes.

76. The right to access seaports for commercial purposes is expressly connected to the ability of citizens to exercise their right to earn a living. It guarantees citizens the ability to access

///

Complaint for Declaratory & Injunctive Relief
No. _____     15

seaports for the purpose of engaging in commerce—for example, landing fish caught in federal fisheries to sell at market pursuant to federal permits.

77. Ports used by Mr. Abad and Mr. Brown to land their swordfish and non-swordfish catch are "seaports." Were Mr. Abad permitted by California to independently land swordfish, he would likewise do so at "seaports" in California. Were Mr. Brown permitted by California to land swordfish, he would do so at "seaports" in California.

78. The enforcement of the California Fish and Game Code's prohibition on the taking or landing for commercial purposes of swordfish caught by drift gill net is, as applied to Mr. Abad and Mr. Brown, an abridgement of their federal right to access seaports.

79. Because the right to access seaports is expressly linked to citizens' right to earn a living, the prohibition on taking or landing swordfish caught for commercial purposes abridges Mr. Abad's and Mr. Brown's constitutionally-protected right to earn a living because their ability to pursue their chosen livelihood is harmed by the prohibition.

80. Defendants have no compelling, substantial, or legitimate interest in prohibiting Mr. Abad or Mr. Brown from accessing seaports in California for the taking or landing of swordfish caught for commercial purposes with drift gill net subject to a valid federal permit.

81. Defendants' enforcement of the prohibition on Mr. Abad's independently accessing seaports in California for the taking or landing of swordfish caught for commercial purposes with drift gill net, *see* Cal. Fish & Game Code §§ 8561(a), 12159, even if Mr. Abad possessed a valid federal permit to do the same, is not narrowly tailored to achieve, nor is it rationally related to, any compelling, substantial, or legitimate governmental interest.

82. Defendants' enforcement of the prohibition on Mr. Brown's accessing seaports in California for the taking or landing of swordfish caught for commercial purposes with drift gill net, *see* Cal. Fish & Game Code §§ 8561(a), 12159, when Mr. Brown possesses a valid federal permit to do the same, is not narrowly tailored to achieve, nor is it rationally related to, any compelling, substantial, or legitimate governmental interest.

///

///

83. As applied to Mr. Abad and Mr. Brown, Defendants' enforcement of Cal. Fish & Game Code §§ 8561(a), 12159 to prohibit Mr. Abad and Mr. Brown from accessing seaports in California for the taking or landing of swordfish caught for commercial purposes with drift gill net is so burdensome, unreasonable, and unnecessary as to violate the Privileges or Immunities Clause of the Fourteenth Amendment to the United States Constitution.

84. Because of Defendants' enforcement of the above-cited prohibitions on Mr. Brown's and Mr. Abad's accessing seaports in California for the taking or landing of swordfish caught for commercial purposes with drift gill nets subject to valid federal permits, Mr. Abad and Mr. Brown are irreparably harmed and have no adequate remedy at law to prevent or minimize their harm unless Defendants are enjoined from continuing to enforce the challenged prohibitions.

**PRAYER FOR RELIEF**

Wherefore, Mr. Abad and Mr. Brown respectfully request the following relief:

1. Entry of a declaratory judgment that:

   a. The California Fish and Game Code's prohibition on the taking or landing for commercial purposes of swordfish caught by drift gill net, and Defendants' enforcement thereof, operate, as applied to Mr. Abad who would proceed to obtain a federal drift gill net permit but for S.B. 1017's prohibitions—and who cannot obtain a state drift gill net permit—to deprive Mr. Abad of his federal rights secured by the Magnuson Fisheries Act and its implementing regulations, and therefore such prohibition and enforcement are unlawful;

   b. The California Fish and Game Code's prohibition on the taking or landing for commercial purposes of swordfish caught by drift gill net, and Defendants' enforcement thereof, operate, as applied to Mr. Brown who holds a federal drift gill net permit but who cannot obtain a state drift gill net permit, to deprive Mr. Brown of his federal rights secured by the Magnuson Fisheries Act and its implementing regulations, and therefore such prohibition and enforcement are unlawful;

   c. The California Fish and Game Code's prohibition on the taking or landing for commercial purposes of swordfish caught by drift gill net, and Defendants' enforcement

1  thereof, are, as applied to Mr. Abad who would proceed to obtain a federal drift gill net
2  permit but for S.B. 1017's prohibitions—and who cannot obtain a state drift gill net
3  permit—unconstitutional under the Supremacy Clause, U.S. Const. art. VI, cl. 2;

4      d.    The California Fish and Game Code's prohibition on the taking or landing
5  for commercial purposes of swordfish caught by drift gill net, and Defendants' enforcement
6  thereof, are, as applied to Mr. Brown who holds a federal drift gill net permit but who cannot
7  obtain a state drift gill net permit, unconstitutional under the Supremacy Clause, U.S. Const.
8  art. VI, cl. 2;

9      e.    The California Fish and Game Code's prohibition on Mr. Abad accessing
10 seaports for the taking or landing for commercial purposes of swordfish caught by drift gill
11 net, and Defendants' enforcement thereof, are, as applied to Mr. Abad who would proceed
12 to obtain a federal drift gill net permit but for S.B. 1017's prohibitions—and who cannot
13 obtain a state drift gill net permit—unconstitutional under the Privileges or Immunities
14 Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend.
15 XIV, § 1;

16     f.    The California Fish and Game Code's prohibition on Mr. Brown accessing
17 seaports for the taking or landing for commercial purposes of swordfish caught by drift gill
18 net, and Defendants' enforcement thereof, are, as applied to Mr. Brown who holds a federal
19 drift gill net permit but who cannot obtain a state drift gill net permit, unconstitutional under
20 the Privileges or Immunities Clause of the Fourteenth Amendment to the United States
21 Constitution, U.S. Const. amend. XIV, § 1;

22     2.    Entry of a preliminary and permanent injunction against Defendants, their agents,
23 representatives, and employees, from enforcing or giving effect in any way to the California Fish
24 and Game Code's prohibition on the taking or landing for commercial purposes of swordfish caught
25 by drift gill net, as applied to Mr. Abad who would proceed to obtain a federal drift gill net permit
26 but for S.B. 1017's prohibitions—and who cannot obtain a state drift gill net permit;

27     3.    Entry of a preliminary and permanent injunction against Defendants, their agents,
28 representatives, and employees, from enforcing or giving effect in any way to the California Fish

Complaint for Declaratory & Injunctive Relief     18
No. _____

and Game Code's prohibition on the taking or landing for commercial purposes of swordfish caught by drift gill net, as applied to Mr. Brown who holds a federal drift gill net permit but who cannot obtain a state drift gill net permit;

4. Entry of a permanent injunction against Defendants, their agents, representatives, and employees, from enforcing or giving effect in any way to the California Fish and Game Code's prohibition on accessing seaports for the taking or landing for commercial purposes of swordfish caught by drift gill net, as applied to Mr. Abad who would proceed to obtain a federal drift gill net permit but for S.B. 1017's prohibitions—and who cannot obtain a state drift gill net permit;

5. Entry of a permanent injunction against Defendants, their agents, representatives, and employees, from enforcing or giving effect in any way to the California Fish and Game Code's prohibition on accessing seaports for the taking or landing for commercial purposes of swordfish caught by drift gill net, as applied to Mr. Brown who holds a federal drift gill net permit but who cannot obtain a state drift gill net permit;

6. An award of Mr. Abad's and Mr. Brown's reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 2412, or any other appropriate authority; and

7. An award of any other further relief that the Court deems to be just and proper.

DATED: February 27, 2020.

        Respectfully submitted,

        DAMIEN M. SCHIFF
        CALEB R. TROTTER

        By <u>s/ Damien M. Schiff</u>
            DAMIEN M. SCHIFF

        Attorneys for Plaintiffs Joseph Abad
        and Austen Brown