1  DAMIEN M. SCHIFF, No. 235101
   Email: dschiff@pacificlegal.org
2  CALEB R. TROTTER, No. 305195
   Email: ctrotter@pacificlegal.org
3  Pacific Legal Foundation
   930 G Street
4  Sacramento, California 95814
   Telephone: (916) 419-7111
5  Facsimile: (916) 419-7747

6  GLENN E. ROPER*
   Email: geroper@pacificlegal.org
7  Pacific Legal Foundation
   1745 Shea Center Drive, Suite 400
8  Highlands Ranch, Colorado 80129
   Telephone: (916) 419-7111
9  *Pro Hac Vice

10 Attorneys for Plaintiffs

11

12              UNITED STATES DISTRICT COURT

13         FOR THE EASTERN DISTRICT OF CALIFORNIA

14 JOSEPH ABAD; AUSTEN BROWN,          No. 2:20-cv-00447-TLN-AC

15              Plaintiffs,            **PLAINTIFFS' RESPONSE IN
                                       OPPOSITION TO DEFENDANTS'**
16      v.                            **MOTION TO DISMISS**

17 CHARLTON BONHAM, in his official    Judge: Hon. Troy L. Nunley
   capacity as Director of the California  Date: June 25, 2020
18 Department of Fish and Wildlife;    Time: 2:00 p.m.
   XAVIER BECERRA, in his official capacity  Courtroom: 2
19 as Attorney General of the State of  Trial Date: None set
   California,                         Action Filed: February 27, 2020
20
                Defendants.
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION............................................................................................... 1

ARGUMENT ...................................................................................................... 2

    I.    THE FISHERMEN'S CLAIMS ARE RIPE UNDER ARTICLE III................... 2

        A.   This Action Is Not a Pre-Enforcement Challenge ............................ 2

        B.   The Fishermen Satisfy the Typical Test for Article III Ripeness................... 4

        C.   The Fishermen's Claims Are Also Ripe Due to Threatened Enforcement...... 7

           1.   The Fishermen Have a Concrete Plan ...................................... 8

           2.   There Is Sufficient Warning or Threat of Enforcement ......................... 10

           3.   There Is a History of Enforcement of Relevant Law ............................... 13

    II.   PRUDENTIAL RIPENESS CONSIDERATIONS ALSO
         SUPPORT THIS COURT'S JURISDICTION ................................................. 14

CONCLUSION ................................................................................................. 17

1

# TABLE OF AUTHORITIES

2

## Cases

3

*Abbott Labs. v. Garner*,
  387 U.S. 136 (1967)...................................................................15

4

*Ass'n of Am. R.R. v. Cal. Office of Spill Prevention & Response*,
  113 F. Supp. 3d 1052 (E.D. Cal. 2015) ...........................................9-10

5

6

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979).....................................................................11

7

*Block v. Meese*,
  793 F.2d 1303 (D.C. Cir. 1986) .........................................................7

8

*Bonds v. Tandy*,
  457 F.3d 409 (5th Cir. 2006).............................................................5

9

*Cal. Pro-Life Council v. Getman*,
  328 F.3d 1088 (9th Cir. 2003)............................................................8

10

11

*Califano v. Sanders*,
  430 U.S. 99 (1977)......................................................................15

12

*Freedom to Travel Campaign v. Newcomb*,
  82 F.3d 1431 (9th Cir. 1996).........................................................15-16

13

*Frigard v. United States*,
  862 F.2d 201 (9th Cir. 1988)............................................................17

14

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) .......................................................................12

15

16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014).................................................................14-15

17

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...................................................................4, 7

18

*MedImmune v. Genentech*,
  549 U.S. 118 (2007)..................................................................10, 12

19

20

*Montana Shooting Sports Ass'n v. Holder*,
  727 F.3d 975 (9th Cir. 2013)........................................................3-6, 9

21

*Nat'l Audubon Soc'y, Inc. v. Davis*,
  307 F.3d 835 (9th Cir. 2002)...............................................2-4, 7, 15-16

22

*Sacks v. Office of Foreign Assets Control*,
  466 F.3d 764 (9th Cir. 2006)........................................................8, 12

23

*San Diego Cty. Gun Rights Comm. v. Reno*,
  98 F.3d 1121 (9th Cir. 1996)......................................................2, 4, 8, 11-13

24

*San Francisco Cty. Democratic Cent. Comm. v. Eu*,
  826 F.2d 814 (9th Cir. 1987), *aff'd*, 489 U.S. 214 (1989)....................16

25

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012)............................................................9

26

*Skyline Wesleyan Church v. California Dep't of Managed Health Care*,
  No. 18-55451, 2020 WL 2464926 (9th Cir. May 13, 2020) ..................16

27

28

*Steffel v. Thompson,*
        415 U.S. 452 (1974) ............................................................................ 11

*Stormans, Inc. v. Selecky,*
        586 F.3d 1109 (9th Cir. 2009) ................................................. 13, 15-16

*Susan B. Anthony List v. Driehaus,*
        573 U.S. 149 (2014) ................................................................... 11-12, 14

*Thomas v. Anchorage Equal Rights Comm'n,*
        220 F.3d 1134 (9th Cir. 2000) ........................................................ 2, 4, 8

*Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.,*
        24 F.3d 56 (9th Cir. 1994) ................................................................. 5-7

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
        433 F.3d 1199 (9th Cir. 2006) ............................................................ 15

## Constitutional Provision

U.S. Const. art. III, § 2, cl. 1 ............................................................... 15

## Statutes

Cal. Fish & Game Code § 8561 ............................................... 1, 3, 7, 9, 14

        § 8561(a) ......................................................................................... 5

        § 8561.5(a) ............................................................... 1-3, 10, 14

        § 8583(b)(2) ................................................................................. 13

        § 12000(a) ................................................................................... 16

        § 12012 ................................................................................ 1, 11

        § 12012(a) .............................................................................. 6, 17

        § 12153 .................................................................................. 6, 17

        § 12159 ..................................................................... 1, 6, 11, 17

Cal. Stats. ch. 844, § 1(f) (2018) ...................................................... 13

## Regulations

50 C.F.R. § 660.707(f) ............................................................................ 5

        § 660.707(f)(8) ............................................................................. 5

Cal. Code Regs. tit. 14, § 197(b)(1)(J) ..................................... 1, 11

        § 197(b)(2)(D) ................................................................... 1, 11

## Other Authorities

Cal. Dep't of Fish & Wildlife,
        2020-2021 Commercial Fishing License Worksheet,
        https://nrm.dfg.ca.gov/FileHandler.ashx?DocumentID=93499 ......................... 6

Oceana, *End the Wall of Death: Replace devastating drift gillnets
        off California with cleaner fishing gear* (March 2013),
        *available at* https://bit.ly/2ToAmaU ...................................................... 13

Plaintiffs Joseph Abad and Austen Brown ("Fishermen") respectfully respond in opposition to Defendants' Motion to Dismiss, *see* Doc. 16; Doc. 16-1, Memo. in Support of M. to Dismiss ("Memo").

## INTRODUCTION

Longstanding California Fish and Game Code provisions prohibit commercial fishing and landing of swordfish caught with drift gill nets unless the fisherman possesses a California drift gill net permit.[1] Cal. Fish & Game Code § 8561. But after a recent change in California law (S.B. 1017), issuing new, and transferring existing, state drift gill net permits is now banned. Cal. Fish & Game Code § 8561.5(a). As a result, the Fishermen are prohibited from commercially fishing for swordfish and landing their catch in California seaports because they cannot acquire the necessary state drift gill net permit. This prohibition runs contrary to federal law and prevents the Fishermen from earning a living by fishing for swordfish, because drift gill nets are the only commercially viable gear for catching swordfish, First Amend. Compl. ¶ 68 (Doc. 12), and any unpermitted catch is contraband that cannot be sold at market, Cal. Fish & Game Code §§ 12012, 12159; Cal. Code Regs. tit. 14, § 197(b)(1)(J), (2)(D).

Defendants misconstrue the nature of this action by representing it as a "pre-enforcement" challenge, *see* Memo at 1, and stake their ripeness arguments on the unreasonable and unsupported position that the Fishermen must first place their livelihoods and careers as fishermen at risk by engaging in illegal fishing before they may initiate this action. Fundamentally, this case is not a pre-enforcement challenge at all. Rather, this case seeks declaratory and injunctive relief from the economic injuries already suffered by the Fishermen—and the injuries they continue to suffer—due to their inability to acquire California drift gill net permits or fish without them. Simply, the Fishermen cannot acquire a California drift gill net permit; and without such a permit, they are prohibited from commercially fishing for swordfish with drift

---

[1] Entry into the California drift gill net fishery, by way of access to drift gill net permits, has traditionally been limited. First Amend. Compl. ¶ 37.

1    gill nets and landing their catch in California seaports regardless of whether they

2    possess all other state and federal permits and licenses. Even if the Fishermen did

3    what Defendants suggest and fished without the required state drift gill net permit,

4    they will assuredly be inspected and cited, First Amend. Compl. ¶¶ 57-60, and their

5    contraband catch would be unmarketable in California, *id*. ¶ 61. Therefore, the

6    Fishermen have standing and their claims are ripe for adjudication.

7                                   **ARGUMENT**

8    **I. THE FISHERMEN'S CLAIMS ARE RIPE UNDER ARTICLE III**

9        **A.    This Action Is Not a Pre-Enforcement Challenge**

10           This action is not a pre-enforcement challenge to any California law. The heart

11   of the dispute is not whether the Fishermen will suffer prosecution by Defendants for

12   fishing without the necessary California drift gill net permit (even though they have

13   alleged they will, *see* First Amend. Compl. ¶¶ 57-60), but that the Fishermen already

14   have suffered, and continue to suffer, economic injury due to the prohibition on fishing

15   for swordfish without a state drift gill net permit *that the law prevents them from*

16   *obtaining*, First Amend. Compl. ¶¶ 56-61. In other words, because the Fishermen

17   cannot obtain the necessary state drift gill net permit to commercially fish for

18   swordfish,[2] Cal. Fish & Game Code § 8561.5(a), they are unable to pursue their

19   livelihood as commercial swordfish fishermen absent relief from this Court. Therefore,

20   the test for ripeness of pre-enforcement challenges set forth in *Thomas v. Anchorage*

21   *Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc), does not apply.

22   *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 850, 855-56 (9th Cir. 2002)

23   (*Thomas* test "premised on the plaintiffs' assertion that a 'risk of prosecution' was the

24   injury."); *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir.

25   1996) (analyzing plaintiffs' alleged economic injury separately from alleged injury

26   premised on threat of prosecution).

27

28   [2] Defendants have admitted that the transfer and issuance of California drift gill net permits is now prohibited. Memo at 3.

1    In *Davis*, a coalition of bird watchers and fur trappers challenged California

2  Proposition 4 (1998) that banned the use of certain animal traps. 307 F.3d at 842-43.

3  The bird watchers challenged the trap ban because it complicated efforts to protect

4  threatened and endangered birds from predators, *id*. at 844-45, and the trappers

5  challenged the ban because it harmed their ability to continue earning a living in the

6  fur trade,[3] *id*. at 845, 855-56. The Ninth Circuit held that both groups' claims were

7  ripe. According to the court, the bird watchers' injury—"stemming from the very real

8  threat of loss of birds and other wildlife"—existed at the time their complaint was

9  filed. *Id*. at 850. The court therefore held that their injury was ripe under Article III

10  and the prudential component, and declined to apply the pre-enforcement ripeness

11  test set forth in *Thomas*. *Id*. at 849-50. The Ninth Circuit also declined to apply the

12  *Thomas* pre-enforcement challenge test to the trappers' claims because "[w]hen such

13  tangible economic injury is alleged, we need not rely on [that] test." *Id*. at 855. After

14  applying the standard test for ripeness, the court held that the trappers' claims were

15  ripe under Article III and the prudential component. *Id*. at 856-57.

16    Here, Cal. Fish & Game Code § 8561.5(a) prevents the Fishermen from

17  acquiring a California drift gill net permit, and without such a permit they are

18  prohibited from commercially fishing for swordfish and landing their catch in

19  California seaports, *id*. § 8561. As a result, the Fishermen are suffering direct

20  economic injury. First Amend. Compl. ¶¶ 56-61. And as in *Davis*, the Fishermen's

21  injuries "existed at the time their suit was filed because" they cannot fish due to the

22  passage of S.B. 1017 and its interplay with the existing permit requirements of Fish

23  & Game Code § 8561. *See Davis*, 307 F.3d at 850. Thus, "the core of [the Fishermen's]

24  injuries is not a hypothetical risk of prosecution but rather actual, ongoing economic

25  

26  [3] That the Fishermen seek to enter the California commercial swordfish market anew,
rather than continue businesses interrupted by passage of S.B. 1017, does not

27  preclude their claims here. *See Montana Shooting Sports Ass'n v. Holder*, 727 F.3d
975, 980 (9th Cir. 2013) ("having operated a business enterprise in the past based on

28  a now-prohibited activity is not a necessary condition for standing.").

harm resulting from their [inability to fish]. That is, [the Fishermen] allege direct financial loss caused by [Fish & Game Code §§ 8561, 8561.5]." *Id.* at 855. Because the heart of the Fishermen's injuries is direct financial loss caused by Fish and Game Code provisions already in force, the familiar test for Article III ripeness applies.

## B.   The Fishermen Satisfy the Typical Test for Article III Ripeness

"The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas*, 220 F.3d at 1138. When a plaintiff challenges a government action that regulates him directly, "there is ordinarily little question that the action . . . has caused him injury, and that a judgment preventing . . . the action will redress it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). Under *Lujan*, an injury in fact is "an invasion of a legally protected interest which is . . . concrete and particularized, and . . . actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations and quotations omitted).

In *Davis*, the "[t]he trappers allege[d] that several of the named trapper plaintiffs earned a living through trapping-related activities, and that cessation of trapping caused them economic harm." 307 F.3d at 856. According to the Ninth Circuit, those allegations were sufficient to establish the trappers' injury in fact. *Id.* Indeed, "[e]conomic injury is clearly a sufficient basis for standing." *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1130.

*Montana Shooting Sports* is also instructive. There, the plaintiff alleged that he suffered an "economic injury resulting from laws explicitly prohibiting a business activity that he would otherwise engage in."[4] 727 F.3d at 979. The Ninth Circuit recognized that "[e]conomic injury caused by a proscriptive statute is sufficient for standing to challenge that statute," *id.*, and went on to hold that the plaintiff's

---

[4] The *Montana Shooting Sports* individual plaintiff operated a business that manufactured shooting range equipment, and he brought suit to challenge regulations prohibiting him from expanding his business to manufacture firearms and ammunition. 727 F.3d at 978.

1   allegations were sufficiently specific about the business he would engage in if the

2   challenged regulations in that case were declared inapplicable to the business, *id*. at

3   980. For example, the plaintiff had a background in a related business, had identified

4   suppliers for his proposed new business, had design plans for the proposed products,

5   and had even identified customers. *Id*.

6       Here, the Fishermen have a legally protected interest in pursuing the

7   occupation of their choice. *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*,

8   24 F.3d 56, 65 n.4 (9th Cir. 1994) ("[I]t is well-recognized that the pursuit of an

9   occupation or profession is a protected liberty interest that extends across a broad

10  range of lawful occupations . . . ."); *see also* 50 C.F.R. § 660.707(f); Cal. Fish & Game

11  Code § 8561(a). The Fishermen's interest is therefore sufficient to support this Court's

12  jurisdiction. *See generally Bonds v. Tandy*, 457 F.3d 409, 413 n.8 (5th Cir. 2006)

13  (government action creates an "actual, concrete, and particularized injury [when it]

14  prohibit[s] [a plaintiff] from pursuing his chosen profession").

15      The Fishermen's alleged economic injury is twofold: they are prohibited from

16  commercially fishing for swordfish with drift gill nets because they cannot acquire the

17  necessary state permit, First Amend. Compl. ¶¶ 3-6, 12-13, and they are unable to sell

18  any swordfish caught with drift gill nets but without a state permit, *id*. ¶ 56. Plaintiff

19  Abad has fished commercially for over 30 years, and currently participates in the drift

20  gill net swordfish fishery through permits, vessel, and nets owned by his employer.

21  *Id*. at ¶¶ 3-4, 12. Mr. Abad wishes to fish independently, however, and he has an

22  agreement with his employer to acquire his employer's federal permit,[5] and to use the

23  ─────────────────────

24  [5] That the First Amended Complaint does not name Mr. Abad's employer is
    immaterial, *see* Memo at 11, and in any event, Defendants know who Mr. Abad's

25  employer is because he possesses a state drift gill net permit and employs Mr. Abad
    as his ship's captain. Further, Mr. Abad's employer's identity is disclosed to

26  Defendants as part of the Fishermen's initial Rule 26(a) disclosures. That Mr. Abad's
    employer's federal permit is not currently eligible for transfer does not render the

27  transfer agreement too speculative to support Mr. Abad's injury in this case. In fact,
    federal law provides a specific date upon which federal permits may be transferred,

28  50 C.F.R. § 660.707(f)(8), with the primary requirement for transfer being simple

1    employer's vessel and nets, should this Court declare the requirement for a state drift

2    gill net permit unconstitutional and enjoin its enforcement. *Id.* ¶¶ 4, 12. Likewise,

3    Plaintiff Brown has fished commercially since he was a child, getting his start with

4    swordfish and going on to run boats for other species for over a decade. *Id.* ¶ 5. He has

5    also worked as a commercial broker of swordfish caught via drift gill net. *Id.* In pursuit

6    of his plan to commercially fish for swordfish using drift gill nets, Plaintiff Brown has

7    acquired a federal permit, a general California swordfish permit, and has access to

8    the necessary fishing equipment and vessel.[6] *Id.* ¶¶ 6, 13. Despite their detailed

9    actions and plans, the Fishermen are prohibited from commercially fishing for

10   swordfish due to their lack of a state permit which they cannot acquire. Their

11   allegations are therefore "much more than the 'some day' intentions . . . without any

12   description of concrete plans held insufficient for standing." *Montana Shooting Sports*,

13   727 F.3d at 980 (quotations omitted).

14       As to the inability to market unpermitted swordfish, the Fish and Game Code

15   prohibits the sale and purchase of swordfish caught by drift gill net without the proper

16   permits, Cal. Fish & Game § 12012(a), and the First Amended Complaint plausibly

17   alleges that potential buyers of the Fishermen's catch will not purchase it unless it is

18   properly permitted, given the substantial penalties for doing so, *see id.*, and the risk

19   of forfeiture, *id.* §§ 12153 (licenses), 12159 (catch). First Amend. Compl. ¶ 61. The

20   Fishermen's loss of such potential business is a concrete and particularized injury.

21   *Wedges/Ledges of California*, 24 F.3d at 61 ("It is well settled that a provider of goods

22   or services has standing to challenge government regulations that directly affect its

23   _____

24   possession for three consecutive years. As will be shown in discovery, Mr. Abad's
     employer's permit will be eligible for transfer by the Spring of 2021.

25   [6] Mr. Brown's current lack of a California commercial fishing license is immaterial.
26   *See* Memo at 11. He has not needed a license for his current activities, but he has
     sufficiently alleged that he is fully prepared and can readily obtain such a license.
27   First Amend. Compl. ¶ 6. Indeed, acquiring a commercial fishing license is a
     ministerial action accomplished by simply submitting an application and paying a fee.
28   *See* https://nrm.dfg.ca.gov/FileHandler.ashx?DocumentID=93499.

1   customers and restrict its market."). *See id.* (citing, inter alia, *Block v. Meese*, 793 F.2d

2   1303, 1309 (D.C. Cir. 1986) (film distributor has standing to challenge classification

3   of film as propaganda because the classification likely would reduce the film's

4   buyers)). The Fishermen have established their injury in fact.

5       Defendants do not contest that the Fishermen satisfy *Lujan*'s second and third

6   prongs in establishing they have standing. In any event, the Fishermen easily satisfy

7   those prongs. First, the Fishermen's economic injury is "fairly traceable" to S.B. 1017's

8   prohibition on transfers of California drift gill net permits and Cal. Fish & Game Code

9   § 8561's requirement that commercial fishing and landing of swordfish be done

10  pursuant to a state drift gill net permit. *See Lujan*, 504 U.S. at 560-61; *Davis*, 307

11  F.3d at 856. As discussed above and throughout their First Amended Complaint,

12  solely due to S.B. 1017's prohibition on the transfer and issuance of state drift gill net

13  permits, the Fishermen are unable to acquire such a permit. And if not for the

14  requirement that a state drift gill net permit is needed to commercially fish for

15  swordfish and land their catch in California seaports, the Fishermen would engage in

16  such activities and sell their catch to California fish buyers. *See* First Amend. Compl.

17  ¶ 61. Second, the Fishermen have alleged that their injuries would be redressed

18  should this Court declare that the state drift gill net permit requirement, in light of

19  the permit transfer ban, is unconstitutional and enjoin enforcement of those

20  provisions as applied to the Fishermen who possess or will possess valid federal

21  permits. And upon entry of such a declaration and injunction, the Fishermen will be

22  able to legally sell their swordfish catch. *See id.* Therefore, the Fishermen have

23  standing and their claims are ripe under Article III of the U.S. Constitution. *See*

24  *Lujan*, 504 U.S. at 560-61; *Davis*, 307 F.3d at 856.

25      **C.    The Fishermen's Claims Are Also Ripe Due
               to Threatened Enforcement**

26

27      The Fishermen's claims and allegations of threatened enforcement also satisfy

28  the *Thomas* three-part test. In order to meet Article III's requirement of a "case" or

1 "controversy," the Fishermen must allege a genuine threat of enforcement. *San Diego*

2 *Cty. Gun Rights Comm.*, 98 F.3d at 1126. The sufficiency of the allegations is

3 determined according to three factors: (1) whether the Fishermen have articulated a

4 "concrete plan" to violate the law in question; (2) whether prosecuting authorities have

5 communicated a specific warning or threat to initiate proceedings; and (3) the history

6 of past prosecution or enforcement under the challenged statute. *Thomas*, 220 F.3d at

7 1139.

8     At the outset, it is not correct that all three factors must weigh in favor of

9 ripeness. *See, e.g.*, *Cal. Pro-Life Council v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003)

10 ("The district court's decision implied that absent a threat or at least a warning that

11 California might prosecute [the plaintiff], [the plaintiff] could not possibly have

12 suffered an injury-in-fact sufficient to give it standing. [T]he district court's reading

13 of *Thomas* . . . must be rejected. Our ruling in *Thomas* did not purport to overrule

14 years of Ninth Circuit and Supreme Court precedent recognizing the validity of pre-

15 enforcement challenges to statutes infringing upon constitutional rights."). To be sure,

16 all three factors are "requisite," *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764,

17 773 (9th Cir. 2006), but that is so only in the sense that these are the factors (and no

18 others) that are to govern the analysis. To construe *Thomas* otherwise would result in

19 bizarre outcomes, for example, denying review to a plaintiff who has been repeatedly

20 warned but who cannot identify instances of prosecution under a recently enacted

21 statute.

22     **1.   The Fishermen Have a Concrete Plan**

23     The Fishermen have shown that they are ready, willing, and able to fish for

24 swordfish with drift gill nets pursuant to federal permits but have chosen not to

25 finalize such plans for fear of enforcement for not having the necessary (and

26 unavailable) state permit. First Amend. Compl. ¶¶ 2-6, 56-58. As discussed above,

27 *supra* at 5-6, Plaintiff Abad has an agreement with his employer to acquire his

28 ///

employer's federal permit,[7] and to use the employer's vessel and nets, should this Court declare the requirement for a state drift gill net permit unconstitutional and enjoin its enforcement. First Amend. Compl. ¶¶ 4, 12. Likewise, Plaintiff Brown has acquired a federal permit,[8] a general California swordfish permit, and has access to the necessary fishing equipment and vessel. *Id.* ¶¶ 6, 13. The Fishermen's allegations are thus "much more than the 'some day' intentions . . . without any description of concrete plans held insufficient for standing." *Montana Shooting Sports*, 727 F.3d at 980 (quotations omitted).

*Ass'n of Am. R.R. v. Cal. Office of Spill Prevention & Response*, 113 F. Supp. 3d 1052 (E.D. Cal. 2015), is not to the contrary. In that case, railroad plaintiffs alleged that they "articulated a concrete plan to deliver oil through California—the conduct that S.B. 861 criminalizes[.]" *Id.* at 1058. This Court disagreed and held that no concrete plan was established because plaintiffs failed to articulate a plan to engage in activities actually prohibited by the challenged statutes: delivering oil through California by rail without complying with various regulations concerning spills and cleanups. *Id.* In contrast, the Fishermen have alleged specific plans to commercially fish for swordfish with drift gill nets pursuant to federal permits, but have chosen not to fish because of the challenged requirement for a state permit they are prohibited from acquiring. Indeed, their proposed activity—fishing without a state permit—is expressly prohibited by state law. Cal. Fish & Game Code § 8561.

The Fishermen have not carried out their concrete plan because the Fish and Game Code's substantial penalties for the unpermitted catch and sale of drift-gill-net-caught swordfish coerce their compliance. Such a result supports immediate judicial

---

[7] At this stage of the proceedings Defendants improperly question Mr. Abad's and his employer's agreement. *See* Memo at 11. On a motion to dismiss, all factual allegations must be accepted "as true and construe them in the light most favorable to the nonmoving party." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012).

[8] Exhibit 1 to the First Amended Complaint contains Mr. Brown's renewed federal permit, effective April 1, 2020, through March 31, 2021.

1  review. *See MedImmune v. Genentech*, 549 U.S. 118, 128-29 (2007) ("[W]here

2  threatened action by government is concerned, we do not require a plaintiff to expose

3  himself to liability before bringing suit to challenge the basis for the threat—for

4  example, the constitutionality of a law threatened to be enforced. The plaintiff's own

5  action (or inaction) in failing to violate the law eliminates the imminent threat of

6  prosecution, but nonetheless does not eliminate Article III jurisdiction.") (emphasis

7  removed). While this Court previously held that there was no coerced compliance for

8  railroads where implementing regulations for a challenged statute had not yet been

9  enacted and the railroads had not yet changed their conduct, *Ass'n of Am. R.R.*, 113

10  F. Supp. 3d at 1059, the Fish and Game Code here expressly prohibits the Fishermen

11  from fishing because it also prohibits them from acquiring the necessary state permit.

12  And while it is technically within the Fishermen's control whether they comply with

13  California's prohibition on their fishing without a state drift gill net permit, it is solely

14  due to Cal. Fish & Game Code § 8561.5(a) that they cannot obtain the needed permit.

## 2. There Is Sufficient Warning or Threat of Enforcement

16  At the outset, it is necessary to clarify the enforcement that the Fishermen

17  allege. First, it is uncontested that Defendants already enforce the bans on issuing

18  new drift gill net permits and transferring existing permits. Memo at 3. Therefore, no

19  warning or threat, specific to the Fishermen or generalized, of enforcement of Cal.

20  Fish & Game Code § 8561.5(a) is necessary because it is not possible for them to obtain

21  the permit needed to legally fish for swordfish with drift gill nets, and this provision

22  is not amenable to any discretion on the part of the Department of Fish and Wildlife

23  ("Department"). Second, the Fishermen have alleged significant threats of

24  enforcement should they decide to fish without the state drift gill net permit they are

25  unable to acquire. For example, they have alleged that: Department wardens

26  regularly inspect vessels, permits, and landing receipts, First Amend. Compl. ¶ 59; at

27  sea, a commercial fisherman can expect his vessel to be boarded by Department

28  wardens, and the gear and catch inspected, on average once a year, *id.*; as a general

1   rule, if a warden sees a commercial vessel at sea, that vessel will be boarded and

2   inspected, *id.*; dockside, a commercial fisherman can expect his vessel, gear, permits,

3   and catch to be inspected two to three times per year, *id.*; and as a general rule, if

4   one's vessel is dockside when the wardens are present, an inspection will occur, *id.*

5   "Past enforcement against the same conduct is good evidence that the threat of

6   enforcement is not 'chimerical.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164

7   (2014) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).

8        Further, the "credibility of [the alleged threats of enforcement] is bolstered" by

9   the allegations centered on marketing the Fishermen's catch. *See Susan B. Anthony*

10   *List*, 573 U.S. at 164 (credibility of threatened enforcement "bolstered" by fact "that

11   authority to file a complaint with the Commission is not limited to a prosecutor or an

12   agency"). For example, here, the Fishermen have alleged that: state-licensed fish

13   receivers and others authorized to purchase fish from commercial fishermen will not

14   do so if a fisherman cannot demonstrate that his catch is properly permitted, First

15   Amend. Compl. ¶ 61; not only would unpermitted fish be subject to seizure, Cal. Fish

16   & Game Code § 12159, their purchase would subject the buyer to criminal liability, *id.*

17   § 12012 (unlicensed purchase of illegally caught fish a misdemeanor), *Cf.* Cal. Code

18   Regs. tit. 14, § 197(b)(1)(J), (2)(D) (landing receipt must show, among other things, the

19   type of gear used and the fishery permit number); and California commercial fish

20   buyers regularly inspect landing receipts to make sure that fishermen and their catch

21   are properly permitted, First Amend. Compl. ¶ 61. Taken together, the Fishermen's

22   allegations establish significant threats of imminent enforcement that are "far from

23   'imaginary or speculative.'" *Susan B. Anthony List*, 573 U.S. at 165 (quoting *Babbitt*

24   *v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

25        Although the Fishermen have not alleged a specific warning or threat to

26   themselves, the absence of such an allegation should not defeat their claims. *See San*

27   *Diego Cty. Gun Rights Comm.*, 98 F.3d at 1127 ("A specific warning of an intent to

28   prosecute under a criminal statute *may suffice* to show imminent injury and confer

standing.") (emphasis added). The Department has been repeatedly asked to state whether it will continue to enforce the Fish and Game Code's prohibitions for unpermitted drift gill net use in light of the enactment of the federal permitting regime, yet the Department has repeatedly declined to say. First Amend. Compl. Exhs. 3-6; *see Susan B. Anthony List*, 573 U.S. at 165 (that "respondents have not disavowed enforcement" lends support to fear of threatened enforcement); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) ("The Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do."). Thus, there is no plausible way for the Fishermen to trigger a Departmental warning or threat to prosecute without violating the law. But to require them to take that perilous course would conflict with the Supreme Court's recognition in *MedImmune* that coerced compliance to avoid liability does not defeat jurisdiction. *See MedImmune*, 549 U.S. at 128-29; *cf. San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1128 (a genuine threat of prosecution can be established even in the absence of plaintiff-specific threats of enforcement "where the government's willingness to use the challenged provisions in the past corroborated the imminence of the threat of prosecution").

This case is also distinguishable from *Sacks*, in which "the government's decision to penalize [the plaintiff] for only the Travel Ban violation, when it was fully aware he had also violated the Medicine Restrictions, indicates that the government does *not* intend to penalize him for any of his numerous violations of the Medicine Restrictions." *Sacks*, 466 F.3d at 774 (emphasis in original). In contrast here, the Department has taken no steps to indicate that it will not enforce the Fish and Game Code's prohibitions on the unpermitted use of drift gill nets to catch swordfish. First Amend. Compl. ¶ 60 ("Neither the Department nor the Attorney General's Office has issued any statement of non-enforcement as to the Fish and Game Code's provisions pertaining to the unpermitted catch and sale of swordfish caught by drift gill net.").

///

### 3. There Is a History of Enforcement of Relevant Law

In cases where plaintiffs are unable "to point to any history of prosecutions [it] undercuts their argument that they face a genuine threat of prosecution." *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1128. In contrast, here, the Fishermen allege regular inspection of commercial fishermen for compliance with the Code's permitting requirements, such that inspection of the Fishermen and their permits and gear is inevitable. *See, e.g.*, First Amend. Compl. ¶ 59 (commercial fishermen are inspected dockside on average two to three times per year). The Fishermen also allege a justiciable controversy based on how fish buyers behave in response to potential enforcement of the same challenged Fish and Game Code provisions, *id.* ¶ 61. *See also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1124 (9th Cir. 2009) (pharmacist alleged ripe challenge to regulation that had not been enforced against her because pharmacies were less likely to hire her given her intention not to comply with the regulation).

Context also matters. Many in the environmental community are vehemently opposed to drift gill nets. *See, e.g.*, Oceana, *End the Wall of Death: Replace devastating drift gillnets off California with cleaner fishing gear* (March 2013), *available at* https://bit.ly/2ToAmaU. Evidencing their zeal, these groups are expected to provide at least $1 million to lure fishermen away from drift gill nets. *See* Cal. Fish & Game Code § 8583(b)(2). Indeed, the entire point of S.B. 1017 is to end the drift gill net fishery. Cal. Stats. ch. 844, § 1(f) (2018) ("Given the economic and environmental benefits to the people of the state, it is the intent of the Legislature to direct new entrants into the swordfish fishery toward the use of lower impact fishing gears for a modernized fishery, while allowing current participants in the drift gill net fishery to continue those practices for a limited duration of time."). It is therefore implausible that the Department could commit to nonenforcement as to fishermen who lack state permits but who nevertheless catch, land, and attempt to sell swordfish caught with drift gill nets. Such nonenforcement would directly undermine S.B. 1017 and the intent of those non-state organizations who are to donate substantial sums to the statute's

1    implementation.

2         In addition, unlike laws of general applicability that can affect hundreds of

3    thousands of people, the Fish and Game Code provisions pertaining to drift gill nets

4    apply to an incredibly small number of people. In fact, there are fewer than two dozen

5    or so active drift gill net fishermen remaining. First Amend. Compl. ¶ 41. That,

6    combined with the fact that the activity that the Fishermen want to engage in cannot

7    be done clandestinely, but rather requires very public activity at docks and interaction

8    with state-supervised fish buyers, *id*. ¶¶ 59, 61, means that the likelihood of

9    enforcement is naturally much greater here.

10        It is true that S.B. 1017's addition of § 8561.5(a) to the Fish and Game Code to

11   ban of the issuance of new—and transfers of existing—state drift gill net permits is

12   recent. But as discussed above, no history of enforcement of that provision is necessary

13   because the Department lacks discretion to decline to enforce the plain terms of the

14   ban. It simply will not issue any new permits or transfer existing permits between

15   parties. As Defendants acknowledge, the relevant consideration of enforcement

16   history is more properly focused on Cal. Fish & Game Code § 8561 which prohibits

17   commercial fishing and landing of swordfish caught with drift gill nets unless the

18   fisherman possesses a California drift gill net permit. *See* Memo at 12:6-7. And as the

19   Fishermen have alleged, First Amend. Compl. ¶¶ 59-61, and discussed above, there is

20   ample evidence of the Department's, and fish buyers', history of enforcing Cal. Fish &

21   Game Code § 8561.

## II.  PRUDENTIAL RIPENESS CONSIDERATIONS ALSO SUPPORT THIS COURT'S JURISDICTION

24        Because Plaintiffs have established their Article III injury, declining

25   jurisdiction on prudential ripeness grounds would be in "tension with [the Supreme

26   Court's] recent reaffirmation of the principle that 'a federal court's obligation to hear

27   and decide' cases within its jurisdiction 'is virtually unflagging.'" *Susan B. Anthony*

28   *List*, 573 U.S. at 167 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

1  572 U.S. 118, 126 (2014)). In other words, it is rarely appropriate to decline to

2  adjudicate a case in which plaintiffs have satisfied the Constitution's requirement of

3  "Cases" and "Controversies." *See* U.S. Const. art. III, § 2, cl. 1. Nevertheless, even

4  considering the prudential ripeness doctrine, this case is ripe.

5       Questions of prudential ripeness consider the "fitness of the issues for judicial

6  decision" and "the hardship to the parties of withholding court consideration."

7  *Stormans, Inc.*, 586 F.3d at 1126 (quoting *Abbott Labs. v. Garner*, 387 U.S. 136, 149

8  (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). "Legal

9  questions that require little factual development are more likely to be ripe." *Freedom*

10 *to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1434 (9th Cir. 1996). "By contrast, if

11 the legal question depends on numerous factors for its resolution, extensive factual

12 development may be necessary." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

13 *L'Antisemitisme*, 433 F.3d 1199, 1212 (9th Cir. 2006).

14      In *Freedom to Travel Campaign*, an organization challenged the

15 constitutionality of the federal government's restrictions on travel to Cuba. The Ninth

16 Circuit held that the organization's claims were ripe even though it had not applied

17 for, or been denied, a license to travel to Cuba, because the court could "firmly predict"

18 that the organization's license would be denied. 82 F.3d at 1435-36. Thus, any

19 additional factual development was unnecessary. *Id.* at 1435.

20      Similarly, in *Davis*, the bird watchers' claims were ripe because "the specific

21 facts surrounding possible actions to enforce the statute will not aid resolution of

22 [their] federal preemption challenges to Proposition 4. [Bird watchers'] injury is

23 established, and the legal arguments are as clear as they are likely to become." 307

24 F.3d at 850. In that case, the Ninth Circuit also held that the trapper plaintiffs' claims

25 were ripe based on the same rationale. *Id.* at 857.

26      Here, the issues raised are primarily legal: whether California Fish and Game

27 Code provisions that penalize drift gill net swordfish fishing without a state permit

28 that the Fishermen are prohibited from acquiring are preempted by the federal

permitting regime which allows for such fishing; and whether those same Code provisions violate the Fishermen's privileges or immunities to access seaports for the landing and marketing of their swordfish catch. Although some factual development may be necessary, the fundamental facts of the dispute will remain unchanged: the Fishermen are prohibited from commercially fishing for swordfish because they do not possess a state permit that they are prohibited from acquiring. Precisely how Defendants enforce the challenged Fish and Game Code provisions will not aid this Court in determining whether the permit requirement and ban on permit transfers and issuances are preempted or comport with the Constitution. Were it otherwise, no case requiring discovery would ever be ripe. This case is fit for judicial review. *See Freedom to Travel Campaign*, 82 F.3d at 1435-36; *Davis*, 307 F.3d at 850, 857.

Notably, if the issues are fit for judicial review, the court ends its inquiry there. *See Skyline Wesleyan Church v. California Dep't of Managed Health Care*, No. 18-55451, 2020 WL 2464926, at *12 (9th Cir. May 13, 2020) ("Because Skyline's federal free exercise claim is fit for review now, we need not and do not reach the second prong of the prudential ripeness inquiry . . . ."). Nevertheless, the hardship factor of prudential ripeness is also met here.

The hardship factor is met where plaintiffs "will suffer the very injury they assert" in the absence of judicial relief, *Stormans, Inc.*, 586 F.3d at 1126, and where a plaintiff suffers "continuing economic injury," *Davis*, 307 F.3d at 857. As discussed above, *supra* at 3-4, 5-7, without relief from this Court, the Fishermen will continue to suffer direct economic injury from their inability to commercially fish for swordfish using drift gill nets and land their catch in California seaports. In addition, a "threat of criminal penalty is considered hardship." *Freedom to Travel Campaign*, 82 F.3d at 1435 (citing *San Francisco Cty. Democratic Cent. Comm. v. Eu*, 826 F.2d 814, 821 (9th Cir. 1987), *aff'd*, 489 U.S. 214 (1989)). Here, California imposes considerable penalties for illegal commercial fishing. *See, e.g.*, Cal. Fish & Game Code §§ 12000(a) (all violations of Code and regulations passed thereunder are presumptively

misdemeanors), 12012(a) (fines and imprisonment for illegal sale or purchase of fish), 12153 (violation of Code provisions pertaining to nets results in forfeiture of all licenses), 12159 (fish illegally caught or sold subject to forfeiture). The Fishermen's claims are ripe.

## CONCLUSION

For the Fishermen, S.B. 1017 is only a stick. *But see* Memo at 1. Due to the prohibition on transferring and issuing California drift gill net permits, they are shut out of the commercial swordfish fishery and cannot pursue their livelihoods fishing for swordfish. That direct economic injury is sufficient to make the Fishermen's claims ripe for adjudication by this Court. Defendants' Motion to Dismiss should be denied.

Alternatively, should this Court grant Defendants' motion, the Court should give the Fishermen leave to amend. *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) ("Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court."). While the Fishermen had the chance to amend their original complaint prior to the filing of Defendants' Motion to Dismiss, they were only generally informed of the basis for the intended motion. Now that Defendants' views on enforcement are known, the Fishermen should be given the opportunity to further allege facts to address their injuries and fears of enforcement if the Court finds their existing allegations lacking.

DATED: June 10, 2020

Respectfully submitted,

DAMIEN M. SCHIFF
CALEB R. TROTTER
GLENN E. ROPER

By s/ Caleb R. Trotter
     CALEB R. TROTTER
*Attorneys for Plaintiffs*