XAVIER BECERRA
Attorney General of California
ERIC M. KATZ
Supervising Deputy Attorney General
ALLAN S. ONO, State Bar No. 130763
L. ELIZABETH SARINE, State Bar No. 285631
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7800
  Fax: (916) 327-2319
  E-mail: Elizabeth.Sarine@doj.ca.gov
*Attorneys for Defendants*
*CHARLTON BONHAM, in his official capacity as*
*Director of the California Department of Fish and*
*Wildlife; XAVIER BECERRA, in his official capacity*
*as Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ABAD; AUSTEN BROWN,<br><br>        Plaintiffs,<br><br>  v.<br><br>**CHARLTON BONHAM, in his official capacity as Director of the California Department of Fish and Wildlife; XAVIER BECERRA, in his official capacity as Attorney General of the State of California,**<br><br>        Defendants. | 2:20-cv-00447-TLN-AC<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>Date:   June 25, 2020<br>Time:   2:00 p.m.<br>Courtroom: 2<br>Judge:  The Honorable Troy L. Nunley<br>Trial Date: None set<br><br>Action Filed: 2/27/2020 |

1

# TABLE OF CONTENTS

2
**Page**

3
Introduction .................................................................................................................. 1

4
Argument ...................................................................................................................... 1

5
I.  Plaintiffs Have Not Alleged Economic Injury Sufficient For Standing
    Because They Fail To Allege An Existing And Ongoing Economic Loss

6
    That Is Traceable To Defendants' Actions. .......................................................... 1

7
    A.  Plaintiffs' Alleged Expectation Of Future Income From
        Participation In The Drift Gill Net Fishery Does Not Amount To
        An Existing Or Continuing Economic Injury. ........................................... 1

8
    B.  Plaintiffs Do Not Have A Legally Protected Right To Participate In

9
        A Limited Entry Fishery .......................................................................... 4

10
    C.  Even If State Law Somehow Prohibits Plaintiffs From
        Commercially Fishing For Swordfish With Drift Gill Nets,
        Plaintiffs Cannot Show That This Unduly Interferes With Their

11
        Ability To Pursue A Livelihood As Fishermen. ....................................... 5

12
    D.  Any Alleged Economic Injury That Is Tied To The Future Actions
        Of Fish Buyers And Other Private Parties Cannot Be Fairly

13
        Traceable To Senate Bill 1017 Or Defendants' Enforcement Of
        Fish And Game Code Requirements. ........................................................ 6

14
    II. Plaintiffs' Inability To Allege A Specific Warning Or Threat To
        Themselves Is Fatal To Their Threat-Of-Prosecution Ripeness Argument .......... 7

15
    A.  Plaintiffs Cannot Meet Their Burden Of Showing That Senate Bill
        1017 Is Actually Being Enforced In The Way They Speculate It

16
        Would Be Enforced. ................................................................................ 8

17
    B.  Defendants' Statement Of Non-Enforcement. ......................................... 8

    C.  Plaintiffs Improperly Rely On Unsupported Arguments Of Counsel

18
        And Evidence That Is Not Properly Before This Court. ......................... 9

19
    III. Prudential Considerations Do Not Support The Exercise Of Jurisdiction ............. 9

20
Conclusion .................................................................................................................. 10

21

22

23

24

25

26

27

28

## INTRODUCTION

Plaintiffs have not met their burden of proving this case is within the Court's jurisdiction. Having conceded that Plaintiffs are unable to allege a "specific warning or threat [of enforcement] to themselves," Plaintiffs[1] attempt to recast their complaint as one that alleges existing and ongoing economic injury.  ECF No. 18 at 1:23, 2:14, 3:20, 4:3, 5:17, 6:20, 11:25. But the only allegation of economic injury in the First Amended Complaint[2] is that Plaintiffs "expect" a part of their future income to "come from participation" in the drift gill net (DGN) fishery. ECF No. 12 at 12:28.

"This is a case in search of a controversy." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1137 (9th Cir. 2000).  Despite their amended pleading, Plaintiffs have not only failed to adequately allege economic injury to confer standing, but also cannot meet their burden of showing that Senate Bill 1017 (S.B. 1017) represents a specific enforcement threat against Plaintiffs.  The Court should dismiss this case for lack of subject matter jurisdiction.  Plaintiffs lack standing, and their claims are unripe.

## ARGUMENT

**I.    PLAINTIFFS HAVE NOT ALLEGED ECONOMIC INJURY SUFFICIENT FOR STANDING BECAUSE THEY FAIL TO ALLEGE AN EXISTING AND ONGOING ECONOMIC LOSS THAT IS TRACEABLE TO DEFENDANTS' ACTIONS.**

As explained below, Plaintiffs have not "alleged a sufficiently concrete, actual injury in the form of economic loss, fairly traceable to the [Defendants'] actions, which a favorable decision would redress so as to establish their constitutional standing." *Suever v. Connell*, 579 F.3d 1047, 1058 (9th Cir. 2009).

**A.    Plaintiffs' alleged expectation of future income from participation in the drift gill net fishery does not amount to an existing or continuing economic injury.**

Plaintiffs' counsel argues that Plaintiffs "already have suffered" and "continue to suffer" economic injuries "due to the prohibition on fishing for swordfish without a state drift gill net permit." ECF No. 18 at 2:13–2:15.  But Plaintiffs' own Complaint contradicts this assertion.

---

[1] Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss is ECF Document No. 18 (ECF No. 18.)
[2] First Amended Complaint, ECF No. 12 (hereafter Complaint).

1

1    Although the Opposition repeatedly cites the same paragraphs in the Complaint (¶¶ 56–61 and 3–

2    6, 12,13), a closer look at those paragraphs reveals that only paragraph 56 even comes close to

3    alleging economic injury.  ECF No. 18 at 1:23, 2:14, 3:20, 4:3, 5:17, 6:20.  Paragraph 56 alleges,

4    in relevant part:

5        > Without declaratory relief . . . Mr. Abad and Mr. Brown will be irreparably injured.
         > A substantial part of Mr. Brown's and Mr. Abad's income is *expected* to come from
6        > participation in the drift gill net fishery.

7

8    ECF No. 12 at 12:24–12:28, italics added.  Under the plain meaning and common sense

9    understanding of these words, Plaintiffs' expectation of *future* income does not support their

10   allegations of an existing or continuing economic injury.

11         Plaintiffs' reliance on *National Audubon Society, Inc. v. Davis*, 307 F.3d 835, 842 (9th Cir.

12   2002) is misplaced.  ECF No. 18 at 3.  In that case, the trappers' economic injuries provided them

13   with standing because Proposition 4 forced them to stop their preexisting practices of using leg-

14   hold traps to earn a living.  307 F.3d at 843, 856.  In contrast, Plaintiffs here acknowledge that

15   they "seek to enter the California commercial swordfish market anew, rather than continue

16   businesses interrupted by passage of S.B. 1017."  ECF No. 18 at 3:26.  Moreover, the trappers in

17   *Davis* could point to an official press release from the Department of Fish and Game that

18   "instructed individuals affected by Proposition 4 to follow its provisions" and "use traps other

19   than leg-hold traps."  307 F.3d at 843.  Plaintiffs here can only point to Defendants' silence.  ECF

20   No. 16-1 at 9.  Under *Davis*, Plaintiffs' alleged economic injuries are insufficient for standing.

21         Plaintiffs also rely heavily on *Montana Shooting Sports Association v. Holder*, 727 F.3d

22   975, 981 (9th Cir. 2013) (*Montana*).  ECF No. 18 at 3:26–3:28, 4:21–5:5.  But *Montana* is

23   explicitly limited to the facts of that case and is also distinguishable on the basis that it does not

24   involve a limited entry fishery.  *Montana*, 727 F.3d at 981.  In *Montana*, Gary Marbut, a

25   manufacturer of shooting range equipment wished to manufacture and sell a .22 caliber rifle

26   called the "Montana Buckaroo" without complying with applicable federal laws regulating

27   firearms because customers valued the "state pride and limited government symbolism associated

28

2

1    with such a product." *Id.* at 978, 980.  The court noted that Marbut not only had "a background in

2    running his own shooting range equipment manufacturing business," he had "design plans for the

3    firearm ready to load into manufacturing equipment" and "hundreds of customers who have

4    ordered the Buckaroo at his asking price." *Id.* at 980.  Thus, based on the specific details of that

5    case, the court concluded that Marbut had standing. *Id.* at 981.  But the court explicitly limited

6    the holding to "the circumstances of this case." *Id.* at 981.[3]

7          Here, Plaintiffs have not alleged that S.B. 1017 interferes with their general ability to fish

8    commercially.  Although the general business of manufacturing firearms might be analogous to

9    the general business of commercial fishing, it is not analogous to participation in a limited entry

10   fishery that—by definition—cannot be pursued by everyone with a desire to engage in that

11   fishery. *Compare* 18 U.S.C.A. § 923 (firearm manufacturers license) *and* Cal. Fish & Game

12   Code § 8032 (commercial fish business license) *with* Cal. Fish & Game Code § 8568 (issuance of

13   DGN shark and swordfish permits limited to prior permittees).  Unlike Marbut who was operating

14   an ongoing business targeted by the challenged law, Plaintiffs "seek to enter the California

15   commercial swordfish [DGN] market anew." ECF No. 18 at 3:26.  If Plaintiffs were challenging

16   a law that broadly applied to all commercial fishermen, then they would likely have been in the

17   same position as the trappers in *Davis* and would have been able to allege existing economic

18   injury.  But, by Plaintiffs' own admission, the challenged provisions of S.B. 1017 apply to "fewer

19   than two dozen or so active drift gill net fishermen"—and Plaintiffs are not currently in that

20   group. ECF No. 18 at 14:4.

21          Plaintiffs here are more like the individual plaintiffs in *National Rifle Association of*

22   *America v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) (*National Rifle*) than the gun

23   manufacturers in either *Montana* or *National Rifle*.  The court in *National Rifle* concluded that

24   manufacturers and dealers of semiautomatic assault weapons had standing but individual

25   plaintiffs who alleged that "they 'desire' and 'wish' to engage in certain possibly prohibited

26   activities" lacked standing to sue. 132 F.3d at 282, 293.  Like the individual plaintiffs in *National*

27   _____

28   [3]The court then went on to dismiss the complaint for failure to state a claim. *Montana*, 727 F.3d at 983.

1 *Rifle*, Plaintiffs here "allege merely that they would like to engage in conduct, which might be

2 prohibited by the statute, without indicating how they are currently harmed by the prohibitions

3 other than their fear of prosecution." *Id.* at 293.

4      *Montana* is not controlling here. *National Rifle* more appropriately describes the lack of

5 standing of individuals who "desire" and "wish" to engage in certain activities but are

6 "restrained" and "inhibited" from doing so.  132 F.3d at 293.

7      **B.    Plaintiffs do not have a legally protected right to participate in a limited**
          **entry fishery.**
8

9      Plaintiffs argue that they have a "legally protected interest in pursuing the occupation of

10 their choice." ECF No. 18 at 5:6.  First, this is irrelevant because Plaintiffs have not and cannot

11 allege that Defendants or S.B. 1017 prevent them from fishing commercially at all.  "[N]o

12 fundamental right to engage in a lawful calling is implicated when a licensing scheme merely

13 limits the type of species commercial fishermen may pluck from the sea," much less when it

14 merely restricts fishermen from using a very specific type of net. *Riley v. Rhode Island Dep't of*

15 *Envtl. Mgmt.*, 941 A.2d 198, 207 (R.I. 2008); *see also Chinatown*, 794 F.3d at 1142 (upholding

16 California statute that prohibited the practice of "shark finning"); *see, infra*, Argument Section

17 I(C).

18      Second, neither Plaintiffs nor the vast majority of people have a right to participate in a

19 limited entry fishery.  By definition a limited entry fishery "means a fishery in which the number

20 of persons who may participate or the number of vessels that may be used in taking a specified

21 species of fish is limited by statute or regulation." Cal. Fish & Game Code § 8100 (added by

22 Stats. 1982, c. 877, § 1).  Here, since the early 1980s, the issuance of shark and swordfish DGN

23 permits has been limited to prior permittees. Cal. Fish & Game Code § 8568 (added by Stats.

24 1983, c. 1078, § 3).

25      To the degree that Plaintiffs take issue with the existence of the limited entry fishery, the

26 time for such a challenge has passed.  It is within the police powers of each state to regulate

27 coastal fisheries in the absence of conflicting federal legislation. *Toomer v. Witsell*, 334 U.S. 385,

28 393 (1948); *Skiriotes v. State of Fla.*, 313 U.S. 69, 75 (1941); *Corsa v. Tawes*, 149 F. Supp. 771,

4

773 (D. Md. 1957) (judgment affirmed in *Corsa v. Tawes*, 355 U.S. 37, 37 (1957)).  Particularly in the "field of conservation" and the management of natural resources, courts have upheld "prohibitions against the use and possession of . . . nets and other particular kinds of fishing devices" where the means bear a reasonable relationship to the state's objectives.  *Corsa*, 149 F. Supp. at 773.

The Ninth Circuit has recently recognized that "fishery management is an inherently cooperative endeavor—with state and federal jurisdiction over the oceans divided according to distance from shore [citations] and with state and federal cooperation contemplated even in the management of federal waters." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1147 (9th Cir. 2015) (*Chinatown*).  Here, both state and federal agencies have adopted the limited entry approach to managing the DGN swordfish and shark fishery.  ECF No. 12 at 7 & 10, ¶¶ 37 & 48. In fact, the Magnuson Fishery Conservation and Management Act of 1976 (16 U.S.C. §§ 1802–1882) "expressly authorizes the Council and the Secretary to impose permit requirements and to establish limited access systems." *Sea Watch Int'l v. Mosbacher*, 762 F. Supp. 370, 375 (D.D.C. 1991).  "[C]ourts are not the appropriate forum" for resolving disagreements about the appropriate way to regulate particular fisheries because these "matters are peculiarly legislative in character." *Corsa*, 149 F. Supp. at 775.

      **C.**    **Even if state law somehow prohibits Plaintiffs from commercially fishing for swordfish with drift gill nets, Plaintiffs cannot show that this unduly interferes with their ability to pursue a livelihood as fishermen.**

Plaintiffs cite *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56 (9th Cir. 1994) (*Wedges*) to support their argument that they have a legally protected interest in making a living as a commercial fisherman of swordfish.  ECF No. 18 at 5:7.  But *Wedges* hurts rather than supports Plaintiffs' arguments.

In *Wedges*, the city temporarily banned the operation of arcade crane amusement games. 24 F.3d at 60.  Manufacturers and distributors of a crane game called "The Challenger" sued the city.  *Id.* at 59.  In rejecting the game manufacturers' argument that the city had violated their right to engage in the occupation of their choice, the court noted: "the fact that the City

5

1   temporarily banned one particular type of amusement game does not in itself establish that the

2   City unduly interfered with either the game operators' or manufacturer's ability to pursue their

3   livelihood in the amusement game industry." *Id.* at 65–66.  Similarly, here, even if state law

4   somehow prohibits Plaintiffs from commercially fishing for swordfish with DGN, this would not

5   establish that Defendants had "unduly interfered" with Plaintiffs' ability to pursue their livelihood

6   as commercial fishermen. *Id.*  Plaintiff Joseph Abad has been participating, and may continue to

7   participate, in the DGN swordfish fishery "through a permit held by this employer."  ECF No. 12

8   at 2 & 4, ¶¶ 4 & 12.  Additionally, Mr. Abad has extensive experience fishing for salmon, crab,

9   albacore, squid, and black cod, in addition to swordfish.  ECF No. 12 at 2, ¶ 3.  Plaintiff Austen

10  Brown has been operating a longline boat in Hawaii fishing for tuna, and also has extensive

11  experience fishing in Alaska for pollock and salmon.  ECF No. 12 at 2, ¶ 5.  Additionally, Mr.

12  Brown makes a living as a fish broker.  ECF No. 12 at 2, ¶ 5.  Plaintiffs' alleged inability to

13  independently participate in the DGN swordfish fishery by no means results in an end to their

14  career as commercial fishermen and/or fish brokers.

15        **D.    Any alleged economic injury that is tied to the future actions of fish buyers
16              and other private parties cannot be fairly traceable to Senate Bill 1017 or
              Defendants' enforcement of Fish and Game Code requirements.**

17

18        As explained above, Plaintiffs do not have an existing or ongoing economic injury.

19  Without an existing or ongoing injury, Plaintiffs' allegations about fish buyers are irrelevant.

20  Nonetheless, for the sake of completeness, Defendants will respond to these arguments.

21        Plaintiffs argue that they suffer economic injury as a result of their inability "to sell any

22  swordfish caught with drift gill nets but without a state permit."  ECF No. 18 at 5:18.  But

23  Plaintiffs' allegations that potential buyers will not purchase fish from commercial fishermen "if a

24  fisherman cannot demonstrate that his catch is properly permitted" cannot save them.  ECF No.

25  12 at 13, ¶ 61.  First, if a fisherman possesses a federal DGN permit, then—in the absence of a

26  direct threat of enforcement from the state regarding the need for a state DGN permit—fish

27  buyers could reasonably assume that the catch is properly permitted.  Second, injuries based on

28

6

1   future actions by third parties can stretch the chain of causation too far.[4] *See Williams v. Lew*,

2   819 F.3d 466, 473 (D.C. Cir. 2016) (concluding the "claims of future injuries are entirely

3   conjectural"); *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) ("we treat 'allegations that are

4   really predictions' differently"). Under Plaintiffs' hypothetical future scenario, it is really the

5   actions of fish buyers that most directly cause economic harm to Plaintiffs, not the actions of

6   Defendants or S.B. 1017.

7   **II.   PLAINTIFFS' INABILITY TO ALLEGE A SPECIFIC WARNING OR THREAT TO**
       **THEMSELVES IS FATAL TO THEIR THREAT-OF-PROSECUTION RIPENESS**
8       **ARGUMENT.**

9         Contrary to what Plaintiffs imply, the Court may not lessen or dispense with strict standing

10   requirements here. ECF No. 18 at 8:8–8:18 (citing First Amendment case); *California Pro-Life*

11   *Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003) ("in the First Amendment-protected

12   speech context, the Supreme Court has dispensed with rigid standing requirements").[5] The three-

13   factor test in *Thomas* is controlling here.[6] 220 F.3d at 1139. Because Plaintiffs have "failed to

14   demonstrate any specific threat of prosecution," their claims are "not justiciable both for lack of

15   standing and ripeness." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 774 (9th Cir.

16   2006) (holding that Sacks lacked standing because he could not demonstrate a specific threat of

17   prosecution, even though he had "established two of the requisite elements"); ECF No. 18 at 8:16

18   (citing *Sacks*).

19

20

21         [4] Plaintiffs incorrectly assert that "Defendants do not contest that the Fishermen satisfy
       *Lujan*'s second and third prongs in establishing they have standing." ECF No. 18 at 7:5. Since
22   Plaintiffs' theory of economic injury is not clearly set forth in the Complaint, Defendants had no
       reason to address it in the moving papers for this Motion to Dismiss.
23         [5] *See also Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956–57 (1984)
       ("when there is a danger of chilling free speech, the concern that constitutional adjudication be
24   avoided whenever possible may be outweighed by society's interest in having the statute
       challenged"). Here, Plaintiffs' case does not implicate First Amendment issues.
25         [6] Like the plaintiffs in *Association of American Railroads v. California Office of Spill*
       *Prevention & Response*, 113 F. Supp. 3d 1052, 1059 (E.D. Cal. 2015), Plaintiffs here "have not
26   been coerced" into complying with S.B. 1017—which makes the buyback program voluntary.
       ECF No. 16-1 at 1; *see, infra*, Argument section II(B) (providing statement of non-enforcement).
27   Therefore, contrary to what Plaintiffs argue, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118,
       128 (2007), is not applicable. ECF No. 18 at 10.
28

7

**A.   Plaintiffs cannot meet their burden of showing that Senate Bill 1017 is actually being enforced in the way they speculate it would be enforced.**

Plaintiffs have not shown a genuine threat of enforcement.  Plaintiffs allege that S.B. 1017 prohibits Plaintiffs "from taking or landing swordfish for commercial purposes by drift gill net" because Plaintiffs are "prohibited from obtaining state permits from existing permittees."  ECF No. 12 at 3:13–3:15.   In particular, Plaintiffs challenge S.B. 1017's alleged "prohibition to fishermen possessing federal drift gill net permits who cannot obtain state drift gill net permits because of S.B. 1017's state permit transfer restriction."  ECF No. 18 at 12:25–12:26.  But Plaintiffs have not met their burden of showing that these statutes are being enforced in the way they hypothesize.  *See Rincon Band of Mission Indians v. San Diego Cty.*, 495 F.2d 1, 5 (9th Cir. 1974).

Plaintiffs concede that they "have not alleged a specific warning or threat to themselves." ECF No. 18 at 11:25; see *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127–28 (9th Cir. 1996) (concluding plaintiffs lack standing, in part because they "concede that they have not been threatened with arrest, prosecution or incarceration").  Plaintiffs' argument essentially boils down to their conjectures about how S.B. 1017 will be applied and enforced.  This is not enough to provide them with standing. As set forth below, this is particularly true where no enforcement consistent with Plaintiffs' speculation is planned.

**B.   Defendants' statement of non-enforcement**

Plaintiffs argue the California Department of Fish and Wildlife's (CDFW's) prior refusal to "indicate that it will not enforce the Fish and Game Code prohibitions on the unpermitted use of drift gill nets to catch swordfish" can lend support to Plaintiffs' theory of enforcement. ECF No. 18 at 12. But, as Defendants explained in the Motion to Dismiss, CDFW's lack of response to the comment letters attached to the Complaint cannot be equated to an actual threat of enforcement. ECF No. 16-1 at 8:20–9:19.  Moreover, Plaintiffs are incorrect in arguing that Defendants are unwilling to make a statement of non-enforcement.

CDFW assures the court and Plaintiffs that it will not enforce the California Fish and Game Code's requirement that fishermen possess a state DGN permit (section 8561) against Plaintiff

8

Austen Brown[7] as someone who has acquired and maintains a valid federal DGN permit via transfer and who is unable to obtain a state DGN permit, unless there is a significant and relevant change to the state or federal law and regulations governing the DGN swordfish and shark fishery.[8]  In other words, the prohibition against the transfer of state DGN shark and swordfish permits in Fish and Game Code section 8561.5 will not act—as Plaintiffs' speculate—to prevent Mr. Brown from taking and landing swordfish caught using DGN with his federal DGN permit. ECF No. 18 at 1:9, 10:14.

As Plaintiffs note, S.B. 1017 is a recent change in California's permitting scheme for the shark and swordfish DGN fishery.  ECF No. 18 at 1:8.  Given the complicated nature of this limited entry fishery program and the public policy considerations involved, this case involves CDFW's "exercise of its enforcement discretion—an area in which the courts have traditionally been most reluctant to interfere."  *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538 (D.C. Cir. 1986); 5 U.S.C.A. § 701(a)(2).

**C.     Plaintiffs improperly rely on unsupported arguments of counsel and evidence that is not properly before this Court.**

In their discussion of the history of enforcement, Plaintiffs rely on unsupported arguments of counsel and a citation to a website that is not properly before this Court.  ECF No. 18 at 13:15–14:1 (arguments of counsel without any citation to the Complaint).  Defendants respectfully ask the Court to disregard Plaintiffs' arguments in this section.

**III.    PRUDENTIAL CONSIDERATIONS DO NOT SUPPORT THE EXERCISE OF JURISDICTION.**

Plaintiffs contend that the "hardship factor" necessary to support the prudential exercise of jurisdiction is met where a plaintiff will suffer the very injury it asserts in the absence of judicial relief.  ECF No. 18 at 16:18–16:20.  Plaintiffs reason that absent judicial relief, they "will continue to suffer direct economic injury from their inability to commercially fish for swordfish using drift gill nets and land their catch in California seaports" due to their perceived threat of

---

[7] Plaintiffs have admitted that Mr. Abad's employer's federal DGN permit is not eligible for transfer now and will not be eligible for transfer until sometime in 2021.  ECF No. 18 at 5-6, fn. 5.

[8] Defendants note that this statement of non-enforcement effectively moots Plaintiffs' pending Motion for Preliminary Injunction.  ECF No. 17-1.

9

1   criminal penalties for the assumed violation of S.B. 1017. ECF No. 18 at 16:21–16:23. But,

2   CDFW is neither threatening nor suggesting that Plaintiffs will face enforcement penalties for

3   violation of S.B. 1017. To the contrary, CDFW has affirmatively disclaimed an intention to

4   do so.

5        Consequently, the absence of an imminent threat of S.B. 1017 enforcement in a manner that

6   would preclude plaintiffs from relying on a federal DGN permit to participate in a federal

7   swordfish fishery without a California DGN permit obviates the anticipated hardship of

8   hypothetical enforcement. There is no compelling factual or consequential support for the

9   prudential exercise of jurisdiction. The Court should decline to exercise jurisdiction.

## CONCLUSION

11        The Complaint should be dismissed without leave to amend. Although Plaintiffs'

12   allegations may continue to evolve, what they have already alleged establishes that they do not

13   have an existing or ongoing economic injury. *See* Fed. R. Civ. P. 11; *Am. Int'l Adjustment Co. v.*

14   *Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996) ("a pleader may assert contradictory statements of fact

15   only when legitimately in doubt about the facts in question"). Thus, under *Thomas*, Plaintiffs'

16   inability to allege a genuine or imminent threat of enforcement means that their claims are "not

17   justiciable both for lack of standing and ripeness." *Sacks*, 466 F.3d at 774. Giving Plaintiffs an

18   additional opportunity to "further allege facts" would only waste the Court's and parties' time and

19   resources. ECF No. 18 at 17:19.

20   Dated: June 18, 2020

XAVIER BECERRA
Attorney General of California
ERIC M. KATZ
Supervising Deputy Attorney General


*/s/ L. Elizabeth Sarine*
L. ELIZABETH SARINE
ALLAN S. ONO
Deputy Attorneys General
*Attorneys for Defendants*
*Charlton Bonham and Xavier Becerra*

LA2018602685

## CERTIFICATE OF SERVICE

Case Name: **Joseph Abad, et al. v. Charlton Bonham, et al.**    No.    **2:20-cv-00447-TLN-AC**

I hereby certify that on <u>June 18, 2020,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>June 18, 2020</u>, at Sacramento, California.

<table>
<tr><td>Cindy Vang</td><td><i>/s/ Cindy Vang</i></td></tr>
<tr><td>Declarant</td><td>Signature</td></tr>
</table>

LA2018602685
34160940.docx