UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ABAD, et al., | No. 2:20-cv-00447-TLN-AC |
| Plaintiffs, | |
| v. | **ORDER** |
| CHARLTON BONHAM, et al., | |
| Defendants. | |

This matter is before the Court on Defendants California Department of Fish and Wildlife ("CDFW") Director Charlton Bonham and California Attorney General Rob Bonta's[1] (collectively, "Defendants") Motion to Dismiss. (ECF No. 16.) Plaintiffs Joseph Abad ("Abad") and Austen Brown ("Brown") (collectively, "Plaintiffs") filed an opposition. (ECF No. 18.) Defendants filed a reply. (ECF No. 20.) Also before the Court is Plaintiffs' Motion for Preliminary Injunction. (ECF No. 17.) Defendants filed an opposition. (ECF No. 41.) Plaintiffs filed a reply. (ECF No. 42.) For the reasons set forth below, the Court DENIES both motions.

///
///
///

---

[1] Both Defendants are being sued in their official capacity.

1

I.     **FACTUAL AND PROCEDURAL BACKGROUND**[2]

At issue is California Senate Bill 1017 ("SB 1017"), which terminated California's permitting program for the commercial catch and landing of swordfish by drift gill net. (ECF No. 12 at 3.) A drift gill net is a wall of netting that hangs in the water and is kept afloat by weights and buoys. (*Id.* at 7.) The net's mesh is large enough to allow a fish to insert its head but not its body and thus catches the fish by its gills. (*Id.*) The use of drift gill nets produces bycatch (the catch of species other than the intended species) and has been considered to have an unacceptably high bycatch rate for marine mammals and other protected species. (*Id.* at 8.)

California has operated its permitting program since the early 1980s. (*Id.*) The program is limited entry in that the maximum number of permits available is based on the number of eligible fishermen at the program's inception. (*Id.* at 7–8.) In 2018, the federal government enacted a federal drift gill net permitting program that adopted many of California's measures. (*Id.* at 10.) Shortly after the creation of the federal permitting program, the California legislature enacted SB 1017. (*Id.* at 11.) The law creates a permit buyback program, under which state permit holders may receive compensation from the state (up to $110,000) if they surrender their drift gill net fishing equipment and state drift gill net permits to the CDFW and agree not to use or transfer their federal drift gill net permits. (*Id.*) In addition to the buyback program, SB 1017 establishes a sunset date for all state drift gill net permits that are not surrendered pursuant to the buyback program. (*Id.*) SB 1017 also prohibits, as of March 31, 2019, the transfer of state drift gill net permits. (*Id.*)

Plaintiffs are fishermen. (ECF No. 12 at 2.) Abad has fished commercially for over 30 years and currently participates in drift gill net fishing through permits, vessel, and nets owned by his employer. (*Id.*) Abad's employer has agreed to transfer his federal drift gill net permit to Abad to allow Abad to use drift gill nets for commercial fishing as an independent permit-holder. (*Id.*) However, Abad and his employer have not completed the transfer due to SB 1017. (*Id.*) Brown has also fished commercially for most of his life and now wishes to commercially fish for

---

[2] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' First Amended Complaint. (ECF No. 12.)

swordfish using drift gill nets. (*Id.* at 2–3.) To that end, Brown obtained a federal permit, has access to the requisite gear and vessel, and is fully prepared and can readily obtain a California fishing license. (*Id.*) However, Brown is unwilling to fish under his federal permit due to fear of prosecution under SB 1017. (*Id.* at 4.) Plaintiffs allege that no gear besides the drift gill net is adequate for a viable commercial swordfish fishing operation. (*Id.* at 15.) Plaintiffs thus allege SB 1017 bars them from making a living as commercial swordfish fishermen because it prevents them from fishing with drift gill nets despite being allowed to do so under federal permits. (*Id.* at 12–14.)

Plaintiffs filed the instant action on February 27, 2020 (ECF No. 1) and the operative First Amended Complaint ("FAC") on May 5, 2020 (ECF No. 12). In the FAC, Plaintiffs allege SB 1017 is unlawful because: (1) it deprives Plaintiffs of their rights to fish for swordfish with drift gill nets under federal law; (2) is preempted by federal law; and (3) violates the Privileges and Immunities Clause of the Fourteenth Amendment. (*Id.* at 14–20.) In short, Plaintiffs allege SB 1017 is preempted or is otherwise unenforceable to the extent that it prohibits the commercial taking or landing of swordfish by drift gill net pursuant to a valid federal permit. (*Id.* at 12.)

Defendants filed a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) on May 19, 2020 (ECF No. 16), and Plaintiffs filed a motion for preliminary injunction on June 10, 2020 (ECF No. 17). The Court will first address the motion to dismiss and then the motion for preliminary injunction.

**II.  MOTION TO DISMISS**

    A.  Standard of Law

A Rule 12(b)(1) motion challenges a federal court's jurisdiction to decide claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1); *see also id.* at 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). If a plaintiff lacks standing under Article III of the United States Constitution, then the Court lacks subject matter jurisdiction and the case must be dismissed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998). To satisfy Article III standing, a plaintiff must allege an injury-in-fact: (1) that is concrete and particularized, as well as actual or imminent, not conjectural or

3

hypothetical; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is redressable by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Plaintiff must "clearly . . . allege facts demonstrating each element." *Spokeo, Inc.*, 136 S. Ct. at 1547 (internal quotations omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

B.     Analysis

Defendants argue the Court should dismiss this action pursuant to Rule 12(b)(1) because Plaintiffs lack standing and their claims are not ripe for adjudication. (ECF No. 16-1 at 11.) More specifically, Defendants argue this is a pre-enforcement action and Plaintiffs fail to establish there is a genuine threat of enforcement as required for constitutional standing because (1) Plaintiffs are unable to allege Defendants specifically threatened them with prosecution under SB 1017, (2) Plaintiffs have not alleged a "concrete plan" to violate the law, and (3) there is insufficient history of past prosecution or enforcement under SB 1017. (*Id.* at 11–18.)

In opposition, Plaintiffs argue this is not a pre-enforcement action. (ECF No. 18-1 at 6.) Rather, Plaintiffs argue they are currently suffering economic injuries as a result of SB 1017 because the law prevents them from obtaining permits to commercially fish for swordfish with drift gill nets and buyers will not purchase swordfish that were caught by drift gill nets without a state permit. (*Id.*) Plaintiffs thus argue their claims are ripe and they have standing. (*Id.*)

The Court agrees with Plaintiffs. The constitutional test for ripeness consists of three parts: (1) a concrete plan to violate the law; (2) a communicated threat of prosecution; and (3) a history of past prosecution or enforcement of the challenged law. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). However, Defendants are correct that the Court need not rely on this test when "tangible economic injury is alleged," as "the gravamen of the suit is economic injury rather than threatened prosecution." *See Nat'l Audubon Society, Inc. v. Davis*, 307 F.3d 835, 855 (9th Cir. 2002); *see also Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013) ("Economic injury caused by a proscriptive statute is sufficient for standing to challenge that statute."). In such circumstances, courts instead apply the test for Article III standing, as articulated above. *See Nat'l Audubon Society*, 307 F.3d at 855–56.

Plaintiffs analogize this case to two Ninth Circuit cases where allegations of economic injury were sufficient to find standing. (ECF No. 18 at 8–9.) First, in *Nat'l Audubon Society*, animal trappers challenged a law prohibiting the use of certain types of traps. 307 F.3d at 842. The trappers alleged they earned a living through trapping, had ceased trapping because of the law, would continue trapping if the law were declared invalid, and therefore sought declaratory and injunctive relief. *Id.* at 845, 855–56. The court held the trappers had standing to challenge the law because their economic injury was directly traceable to the fact that the challenged law explicitly forbade the trapping they would otherwise do. *Id.* at 856.

Second, in *Montana Shooting Sports*, the plaintiff challenged federal firearms regulations that prohibited him from manufacturing firearms without a federal firearms license. 727 F.3d at 978. In finding that the plaintiff sufficiently alleged standing, the court focused on the plaintiff's allegations that he had a background in the shooting range equipment manufacturing business, had identified suppliers for component part of the firearm he wished to manufacture, had design plans for the firearm ready to load into manufacturing equipment, and had identified hundreds of customers who ordered the firearm at his asking price. *Id.* at 980. Although the plaintiff, unlike the trappers in *Nat'l Audubon Society*, did not have a preexisting business that came to a halt after the law was enacted, the court noted that "having operated a business enterprise in the past based on a now-prohibited activity is not a necessary condition for standing." *Id.*

Like the plaintiffs in *Nat'l Audubon Society* and *Montana Shooting Sports*, Plaintiffs in the instant case "allege an economic injury resulting from laws explicitly prohibiting a business activity that [they] would otherwise engage in." *Montana Shooting Sports*, 727 F.3d at 979. As to Abad, Plaintiffs allege Abad is a commercial fisherman who "participates in the drift gill net swordfish fishery through permits, vessel, and nets owned by his employer." (ECF No. 12 at 2.) Plaintiffs further allege Abad's employer agreed to transfer his federal drift gill net permit to Abad so that Abad can independently participate in commercial swordfish fishery using drift gill nets. (*Id.*) However, Plaintiffs allege Abad and his employer have not completed the transfer due to SB 1017. (*Id.*) As to Brown, Plaintiffs allege Brown is a commercial fisherman who seeks to participate in commercial swordfish fishery using drift gill nets. (*Id.* at 3.) Plaintiffs allege

Brown "has obtained a federal permit, has access to the requisite gear and properly permitted vessel, and is fully prepared and can readily obtain a California commercial fishing license." (*Id.*) Moreover, Plaintiffs allege "[f]or the West Coast swordfish fishery, no gear besides the drift gill net is both lawful and adequate for a viable commercial swordfish fishing operation." (*Id.* at 15.) Plaintiffs thus plausibly allege SB 1017 prevents them making a living as commercial fisherman of swordfish because they cannot lawfully obtain a state drift gill net permit and buyers will not purchase swordfish that is caught by drift gill net without a state permit. (*Id.* at 4.)

Defendants argue this case is more like *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997). (ECF No. 20 at 5.) However, *Nat'l Rifle* is not binding on this Court and is distinguishable. In *Nat'l Rifle*, the court held that individual plaintiffs who desired to possess firearms prohibited by the Crime Control Act lacked standing to challenge the law. 132 F.3d at 293. Importantly, the court had previously determined that dealers and manufacturers had standing to sue based on alleged economic harm caused by the law restricting their business operations in various ways. *Id.* at 281. In coming to an opposite conclusion as to the individual plaintiffs, the court stated the individuals, unlike the dealers and manufacturers, suffered no economic harm and their assertions that they "wish[ed]" or "intend[ed]" to engage in proscribed conduct was insufficient to establish standing. *Id.* at 293.

Here, unlike the individual plaintiffs in *Nat'l Rifle*, Plaintiffs *do* allege they are currently suffering economic harm. Though Plaintiffs' allegations are not as detailed as the allegations in *Montana Shooting Sports*, Plaintiffs made sufficient allegations for this Court to conclude that they would pursue commercial fishing of swordfish with drift gill nets if SB 1017 is found to be unlawful. *See Montana Shooting Sports*, 727 F.3d at 980. Based on the limited arguments before the Court and construing Plaintiffs' allegations in the light most favorable to them, the Court finds Plaintiffs have alleged economic injury sufficient to establish standing.

In the alternative, Defendants argue the Court should decline to exercise jurisdiction under the prudential component of the ripeness doctrine. (ECF No. 16-1 at 18.) The Ninth Circuit has articulated that prudential ripeness involves evaluation of "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Thomas*, 220 F.3d at

1141 (internal quotation marks and citation omitted) (finding plaintiffs' claims "unfit for judicial resolution" because they were "devoid of any specific factual context" and the record was "remarkably thin and sketchy, consisting only of a few conclusory affidavits"). Here, Plaintiffs have presented concrete factual allegations that demonstrate how SB 1017 infringes their rights and causes them economic harm. *Id.* The Court thus finds the claim is prudentially ripe, as there is a sufficient factual development for judicial resolution.

Accordingly, the Court DENIES Defendants' motion to dismiss. (ECF No. 16.)

### III.   MOTION FOR PRELIMINARY INJUNCTION

#### A.   Standard of Law

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction

7

1  even where the plaintiff shows that there are "serious questions on the merits . . . so long as the
2  plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the
3  public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to
4  the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's
5  favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35.

6           B.       <u>Analysis</u>

7      At the outset, Plaintiffs' motion is limited to Brown's preemption claims — Plaintiffs do
8  not seek a preliminary injunction on the basis of any of Brown's remaining claims or as to Abad's
9  claims. (ECF No. 17-1 at 8.) Plaintiffs argue all of the *Winter* factors weigh in favor of granting
10 a preliminary injunction to prohibit enforcement of the California Fish and Game Code's drift gill
11 net permit requirements against Brown. (*Id.*)

12     In opposition, Defendants argue Brown will not suffer irreparable harm in the absence of a
13 preliminary injunction and the Court therefore need not consider the remaining *Winter* factors.
14 (ECF No. 41 at 5.) More specifically, Defendants argue Brown cannot demonstrate any threat of
15 irreparable injury because Defendants have repeatedly assured Brown that they will not enforce
16 the state drift gill net permit requirement against him. (*Id.*) Defendants attach a declaration from
17 Mike Stefanak, the Assistant Chief for the Marine Enforcement District at the CDFW, attesting to
18 a statement of non-enforcement as to Brown as someone who has acquired and maintains a valid
19 federal drift gill net permit. (*Id.* at 10.) Defendants also subsequently filed a supplemental
20 declaration from David Bess, Chief of the Law Enforcement Division at the CDFW, confirming
21 the statement of non-enforcement as to Brown. (ECF No. 48.)

22     The Court agrees with Defendants. While Plaintiffs may have plausibly alleged economic
23 injury for the purposes of standing, Plaintiffs have not shown Brown is *likely* to suffer irreparable
24 injury for the purposes of obtaining the injunctive relief he seeks. *See Winter*, 555 U.S. at 20.
25 Plaintiffs specifically move to "enjoin Defendants from enforcing the California Fish and Game
26 Code's prohibition on the taking or landing for commercial purposes caught by drift gill net
27 against" Brown. (ECF No. 17-1 at 24; ECF No. 17-5 at 2–3.) Defendants have provided
28 evidence that they will not enforce the prohibition at issue, thereby mooting Plaintiffs' request for

injunctive relief at this time.  Notably, Plaintiffs have not provided evidence to suggest Defendants will enforce the prohibition despite their repeated statements of non-enforcement.

Plaintiffs must make a clear showing on all four prongs of the *Winter* test to be eligible for a preliminary injunction.  *See All. for the Wild Rockies*, 632 F.3d at 1135.  Since the Court concludes Plaintiffs have not made the required showing of irreparable harm to Brown in the absence of injunctive relief, the Court declines to address the remaining *Winter* factors.  *See MD Helicopters, Inc. v. Aerometals, Inc.*, No. 2:16-cv-02249-TLN-AC, 2018 WL 489102, at *2 (E.D. Cal. Jan. 19, 2018).

Accordingly, the Court DENIES Plaintiff's motion for preliminary injunction.  (ECF No. 17.)

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendants' Motion to Dismiss (ECF No. 16) and Plaintiffs' Motion for Preliminary Injunction (ECF No. 17).  Defendants shall file an answer within thirty (30) days of the electronic filing date of this Order.

IT IS SO ORDERED.

DATED:  January 28, 2022

_____
Troy L. Nunley
United States District Judge